**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **COUVILLION GROUP, LLC** | * | |
| | * | |
| | * | |
| **VERSUS** | * | **C.A. No.** |
| | * | |
| | * | |
| **WHITE MARLIN OPERATING COMPANY LLC** | * | |
| | * | |
| | * | |
| | * | |

*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ***

**VERIFIED COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Couvillion Group, LLC ("Couvillion" or "Plaintiff"), and for its Verified Complaint against White Marlin Operating Company, LLC ("White Marlin" or "Defendant") respectfully avers as follows:

**PARTIES**

I.

Plaintiff, Couvillion, is a limited liability company organized under the laws of the State of Louisiana and has its domicile address in Plaquemines Parish, State of Louisiana.

II.

Upon information and belief, Defendant White Marlin is a limited liability company organized under the laws of Delaware, with its principal business office located at 1415 Louisiana Street, Suite 3550, Houston, Texas 77002, and its sole member domiciled in Texas.

**JURISDICTION AND VENUE**

III.

Pursuant to 28 U.S.C. § 1332(e), this Court has diversity jurisdiction because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because the action is between citizens of different states.

IV.

Pursuant to 28 U.S.C. § 1391(b), venue is proper because, upon information and belief, the Defendant White Marlin resides in the State of Texas, in this judicial district, and because, by virtue of the mandatory and exclusive forum selection clause contained within the Master Service Agreement entered into between Couvillion and White Marlin at issue, the parties have consented to venue and jurisdiction in the Southern District of Texas – Houston Division.

## FACTUAL BACKGROUND

V.

Couvillion is a contractor providing various marine services. White Marlin retained Couvillion to provide various services, including, but not limited to, the removal of certain pipeline located in Corpus Christi, Texas.

VI.

On June 5, 2021, Couvillion and White Marlin executed a Day Rate Proposal containing Couvillion's estimated scope of work, personnel and equipment required, estimated time to prepare and mobilize, proposed day, lump sum and hourly rates, and estimated total day working rate, attached hereto as Exhibit "A." On July 26, 2021, White Marlin and Couvillion executed a Master Service Agreement ("MSA") governing Couvillion's work for White Marlin, attached hereto as Exhibit "B."

VII.

The Master Service Agreement between Couvillion and White Marlin contains the following forum selection clause:

> 31. **APPLICABLE LAW/JURISDICTION AND VENUE.** This MSA and all matters arising out of or relating to this MSA, including tort and statutory claims are governed by, and construed in accordance with the General Maritime Law of the United States. In the event the General Maritime Law of the United States is held inapplicable by a court or tribunal, this MSA and all matters arising out of or relating to this MSA, including tort and statutory claims are governed by, and construed in accordance with the laws of Texas, without giving effect to any

> conflict of laws provisions thereof that would result in the application of the laws of a different jurisdiction. Any suit or proceeding hereunder will be brought exclusively in the United States District Court for the Southern District of Texas – Houston Division. Each Party hereby consents to the personal jurisdiction of said Court and waives any objection that such Court is an inconvenient forum.

VIII.

Beginning on July 26, 2021, Couvillion performed pipeline removal work and other services for White Marlin pursuant to the Day Rate Proposal and the MSA.

IX.

Upon commencing work, Couvillion became aware that the site conditions varied extensively from those originally represented by White Marlin in the bid process and thereafter. For example, the proposed pipeline cut locations were off by as much as 30 feet, and were significantly deeper than White Marlin originally represented to Couvillion.

X.

As a result of these substantially differing site conditions, Couvillion was compelled to make modifications to its initial operations plan, schedule and equipment to further the project. White Marlin was at all times kept apprised of Couvillion's necessary adjustments caused by the issues involved in addressing the site conditions. These changes were discussed daily and in-depth with the on-site White Marlin company representatives with no objection by White Marlin representatives.

XI.

On September 13, 2021, Couvillion submitted an invoice (Invoice No. 204144) to White Marlin in the amount of $1,448,966, with supporting documentation, which reflected Couvillion's charges for day rates, lump sum and/or extra work, equipment, transportation, dock services, and personnel from July 26, 2021 to September 11, 2021. *See* Item 1 to Exhibit C.

XII.

On October 19, 2021, Couvillion submitted an invoice (Invoice No. 204255) to White Marlin in the amount of $651,701.11, with supporting documentation, which reflected Couvillion's charges for day rates, lump sum and/or extra work, equipment, transportation, dock services, and personnel from September 12, 2021 to September 26, 2021. *See* Item 2 to Exhibit C.

XIII.

Despite amicable demand, to date, White Marlin has refused to pay any portion of Invoice No. 204144 for $1,448,966 or Invoice No. 204255 for $651,701.11, for a total outstanding balance associated with this project of $2,100,667.11.

**COUNT ONE: BREACH OF CONTRACTS UNDER GENERAL MARITIME LAW AND TEXAS LAW**

XIV.

Couvillion repeats and reallages paragraphs I-XIII as if repeated verbatim herein.

XV.

As expressly agreed by White Marlin in the executed Day Rate Proposal, "[p]ayments of all invoices or undisputed portions of invoices will be in United States Dollars and are due within thirty (30) days of receipt of invoice. An interest invoice in the amount of one and one-half percent (1.5%) per month will be issued for invoices not paid within thirty (30) days."

XVI.

As expressly agreed by White Marlin in the MSA, "[f]or Work satisfactorily performed, [Couvillion] will submit invoices monthly . . . and invoices will be paid within thirty (30) days of receipt of same. If [White Marlin] disputes any item on [Couvillion's] invoice, [White Marlin] shall notify [Couvillion] of the disputed item in writing within fourteen (14) days of receiving the

invoice. The undisputed portion of the invoice, however, shall be paid within the stated payment period."

XVII.

White Marlin also expressly agreed in the MSA that "[e]ither Party will be in default under the Agreement and any and all Work Orders hereunder if it . . . (i) materially breaches the Agreement . . . ."

XVIII.

Under both the General Maritime Law and Texas law, White Marlin's non-payment for the services rendered by Couvillion constitutes a clear breach of the terms of the contracts by which Couvillion furnished the above-described services to White Marlin.

XIX.

All conditions precedent required of Couvillion under the parties' contracts have been performed.

XX.

White Marlin further agreed in the MSA that "[i]f the Parties become involved in litigation or mediation arising out of this Agreement in which the services of an attorney or other expert are reasonably required, the substantially prevailing Party (giving due consideration to all relevant circumstances and not merely to which Party obtains a judgment or recovery in its favor) will be fully compensated for the cost of its participation in such proceedings, including court costs, expenses and the reasonable costs incurred for attorneys' fees and experts' fees …."

XXI.

As a result of White Marlin's breach of its obligations to Couvillion, Couvillion has suffered damages in the amount of $2,100,667.11, and under the General Maritime Law and Texas law is entitled to judgment requiring White Marlin to pay Couvillion this amount, along

with interest, attorneys' fees, expenses, court costs, and further damage as to be established at trial.

**COUNT TWO: SUIT ON SWORN ACCOUNT**

XXII.

Couvillion repeats and re-alleges paragraphs I-XXI as if repeated verbatim herein.

XXIII.

As a separate cause of action, pursuant to Texas Rule of Civil Procedure 185, Couvillion maintains an action against White Marlin for $2,100,667.11, based upon Couvillion's services rendered pursuant to the written contracts described above.

XXIV.

The amount stated above for Couvillion's services was just and reasonable in accordance with the usual and customary prices for similar services, as further shown in the Affidavit of Michael Roy, attached hereto as Exhibit C, with payment due on the services within 30 days of the dates the invoices were received.

XXV.

As alleged above, despite the fact that 30 days have passed since White Marlin received the invoices, and despite numerous demands by Couvillion on White Marlin for payment, White Marlin has refused and failed to pay the account, to Couvillion's damage in the sum of $2,100,667.11.

XXVI.

White Marlin's refusal to pay the $2,100,667.11 owed for the services Couvillion has timely and satisfactorily performed makes White Marlin liable for the amounts due and owing.

XXVII.

In support of its suit on sworn account under Texas Rule of Civil Procedure 185, Couvillion hereby submits the Affidavit of Michael Roy, attached hereto as Exhibit C, attesting to the amount of $2,100,667.11 owed by White Marlin to Couvillion.

XXVIII.

Consequently, Couvillion is entitled to judgment and all further relief as provided by Texas Rule of Civil Procedure 185 and Tex. Civ. Prac. & Rem. Code § 38.001, including attorneys' fees and pre-judgment interest. *See* TEX. R. CIV. P. 185; TEX. CIV. PRAC. & REM. CODE § 38.001; TEX. FIN. CODE § 302.002.

**COUNT THREE: COMMON LAW FRAUD**

XXIX.

Couvillion repeats and re-alleges paragraphs I-XXVIII as if repeated verbatim herein.

XXX.

Couvillion would show that White Marlin made material false representations to Couvillion that it would be paid for its services provided in accordance with the contracts executed by both Couvillion and White Marlin.

XXXI.

White Marlin made these statements and executed these contracts with the intent that such representations would be acted upon by Couvillion, and Couvillion relied on these representations to its detriment.

XXXII.

Couvillion would further show that White Marlin concealed or failed to disclose material facts within White Marlin's knowledge, that White Marlin knew that Couvillion did not have knowledge of the same and did not have equal opportunity to discover the truth, and that White

Marlin intended to induce Couvillion to continue providing services by such concealment or failure to disclose.

XXXIII.

As a proximate result of such fraud, Couvillion sustained the damages described more fully herein.

**COUNT THREE: QUANTUM MERUIT**

XXXIV.

Couvillion repeats and re-alleges paragraphs I-XXXIII as if repeated verbatim herein.

XXXV.

White Marlin accepted the above-described services provided and completed by Couvillion. White Marlin had reasonable notice that Couvillion expected compensation for these services, but White Marlin has not compensated Couvillion for same.

XXXVI.

White Marlin benefited from the numerous services detailed herein provided by Couvillion and has made no payment for these services and equipment. In turn, Couvillion expended time, effort, and monies performing those services.

XXXVII.

Couvillion avers that White Marlin received said services from Couvillion and was enriched by and/or benefitted from same, to the impoverishment of Couvillion and that Couvillion remains unpaid without justification.

XXXVIII.

Accordingly, Couvillion is entitled to judgment by the Court awarding any and all damages sustained by Couvillion for White Marlin’s unjust enrichment.

**COUNT FOUR: EQUITABLE ESTOPPEL/DETRIMENTAL RELIANCE**

XXXIX.

Couvillion repeats and re-alleges paragraphs I-XXXVIII as if repeated verbatim herein.

XL.

Couvillion relied to its detriment on the representations made by White Marlin that the latter would perform its obligations under the invoices, and contracts entered into by the parties.

XLI.

White Marlin knew or should have known that its representation that it would perform its obligations under the invoices and contracts would induce Couvillion to rely on such representations to Couvillion's detriment.

XLII.

Couvillion's reliance on White Marlin's representations was reasonable.

XLIII.

Couvillion is entitled to judgment by the Court awarding any and all damages sustained as a result of the detrimental reliance upon White Marlin's representations.

**COUNT FIVE: INTEREST OWED**

XLIV.

Couvillion repeats and re-alleges paragraphs I-XLIII as if repeated verbatim herein.

XLV.

As expressly agreed by White Marlin in the executed Day Rate Proposal, "[p]ayments of all invoices or undisputed portions of invoices will be in United States Dollars and are due within thirty (30) days of receipt of invoice. An interest invoice in the amount of one and one-half percent (1.5%) per month will be issued for invoices not paid within thirty (30) days."

Accordingly, interest on each invoice is due and owing at a rate of 1.5% per month until paid, and Couvillion demands payment of same.

XLVI.

In the alternative, Couvillion avers that under TEX. FIN. CODE § 302.002, interest on open accounts accrues at a rate of 6 percent per annum, commencing on the 30th day on which the sum is due and payable. Couvillion is, therefore, entitled to prejudgment interest from the 30th day after each unpaid invoice became due and payable, until the date of judgment.

## PRAYER

**WHEREFORE**, Plaintiff, Couvillion Group, LLC prays that Defendant, White Marlin Operating Company, LLC, be duly served and cited to appear and after due proceedings had, that there be a judgment rendered in favor of Plaintiff and against Defendant, for all unpaid amounts due, together with pre-judgment interest, costs and attorneys' fees, plus such other, further and different relief as the Court deems just and proper.

Respectfully submitted,

**RICHARD GORMAN LAW**

*/s/ Richard L. Gorman*

**Richard L. Gorman**
**State Bar No. 00784155**
**Federal I.D. 15685**
12335 Kingsride Ln. #354
Houston, TX 77024-4116
Telephone: (832) 725-4026
Facsimile: (281) 854-2200
E-mail: rg@richardgormanlaw.com

***Counsel for Plaintiff, Couvillion Group, LLC***

**NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS WILL BE SERVED UPON DEFENDANT, WHITE MARLIN OPERATING COMPANY, LLC**