**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION**

| | |
|---|---|
| **COUVILLION GROUP, LLC** | |
| **VERSUS** | **CIVIL ACTION NO. 4:22-cv-00908** |
| **WHITE MARLIN OPERATING COMPANY LLC ET AL.** | |

**VERIFIED SECOND AMENDED COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Couvillion Group, LLC ("Couvillion" or "Plaintiff"), and for its Verified Second Amended Complaint against White Marlin Operating Company, LLC ("White Marlin"), Agua Tranquillo Midstream LLC ("Agua"), and Talco Petroleum, LLC ("Talco"), Torrent Oil, LLC ("Torrent"), and Nigel Solida ("Solida," and collectively with White Marlin, Agua, Talco and Torrent, "Defendants"), respectfully avers as follows:

**PARTIES**

I.

Plaintiff, Couvillion, is a limited liability company organized under the laws of the State of Louisiana, with its principal business office located in Louisiana, and all of its members are citizens of Louisiana.

II.

Upon information and belief, Defendant White Marlin is a limited liability company organized under the laws of Delaware, with its principal business office located in Texas. Upon information and belief, all member(s) of Defendant White Marlin are citizens of Kansas. Upon information and belief, Defendant White Marlin is an affiliated entity and wholly owned subsidiary of Talco.

III.

Upon information and belief, Defendant Agua is a limited liability company organized under the laws of Delaware, with its principal business office located in Texas. Upon information and belief, all member(s) of Defendant Agua are citizens of Kansas. Upon information and belief, Defendant Agua is an affiliated entity and wholly owned subsidiary of Talco.

IV.

Upon information and belief, Defendant Talco is a limited liability company organized under the laws of Delaware, with its principal business office located in Texas, and its members domiciled in Kansas. Upon information and belief, all member(s) of Defendant Talco are citizens of Kansas.

V.

Upon information and belief, Defendant Torrent is a limited liability company organized under the laws of Delaware, with its principal business office located in Texas, and its members domiciled in Kansas. Upon information and belief, all member(s) of Defendant Torrent are citizens of Kansas.

VI.

Upon information and belief, Defendant Solida is a Kansas resident and domiciled in Kansas. Upon information and belief, Solida is the sole member for Defendants Talco and Torrent, and has extensive business dealings in this District. Upon information and belief, White Marlin and Agua are limited liability companies that have Talco as each's sole member and Talco, another limited liability company, has Solida as its sole member. Torrent, another limited liability company, also has Solida as its sole member.

**JURISDICTION AND VENUE**

VII.

Pursuant to 28 U.S.C. § 1332(e), this Court has diversity jurisdiction because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because the action is between citizens of different states.

VIII.

Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, and because, by virtue of the mandatory and exclusive forum selection clause contained within the Master Service Agreement entered into between Couvillion and White Marlin at issue, the parties have consented to venue and jurisdiction in the Southern District of Texas – Houston Division.

**FACTUAL BACKGROUND**

IX.

Couvillion is a contractor providing various marine services.  White Marlin retained Couvillion to provide various services, including, but not limited to, the removal of certain pipelines located in Corpus Christi Bay, Texas.  Upon information and belief, these pipelines are owned by Agua.

X.

Upon information and belief, defendant organizations are all limited liability companies directed and controlled by Defendant Solida.  Defendant Solida has used these Defendants to avoid liabilities and to defraud Couvillion out of over $2 million dollars for payment for work Couvillion performed and Defendants accepted.

XI.

White Marlin, Agua, Talco, and Torrent are petroleum companies that own a variety of oil and gas assets throughout Texas. Upon information and belief, White Marlin, Agua, and Torrent Oil are affiliated entities. Upon information and belief, all are wholly owned subsidiaries of Talco. Indeed, email correspondence from representatives of White Marlin has identified White Marlin as a "wholly-owned subsidiary of Talco." Upon information and belief, White Marlin and Agua are limited liability companies that have Talco as each's sole member and Talco, another limited liability company, has Solida as its sole member. Torrent, another limited liability company, also has Solida as its sole member. Upon information and belief, Torrent is controlled by Talco and/or Solida. All of these corporate entities have the same office location. Richard Watson, VP of Operations for White Marlin, and upon information and belief, for Torrent and Agua, has a Talco email address. Further, early conversations and conference calls with Couvillion on this project referenced that White Marlin was the "operating arm" for Agua on this project. Upon information and belief, Solida has disregarded the corporate separateness of these entities, commingled the assets of each of these companies, and uses each of the assets of these entities interchangeably to pay for debts and for his own personal gain. Solida operated these entities in such a manner that these entities were organized and operated in a manner to defraud Couvillion to avoid paying Couvillion, and its subcontractors, for work ordered by Defendants for Solida's personal gain.

XII.

Outside of this litigation, Couvillion has been made aware of instances in which Defendants, including specifically Solida, have disregarded the corporate separateness of these entities, commingled their assets, and used the assets interchangeably. For example, in connection with work on this A11 pipeline, purportedly on behalf of White Marlin, Richard Watson purchased a Standard Split Sleeve Repair Clamp ("clamp") from PetroQuip, Inc. ("PetroQuip").

4

However, White Marlin ultimately determined that they did not require the use of the clamp, and returned it to PetroQuip. PetroQuip contacted Mr. Watson to coordinate the refund, and offered to issue a check for the same. However, Mr. Watson directed PetroQuip to refund the payment made by White Marlin to Torrent, and PetroQuip did so. *See* Exhibit D, Affidavit of Kevin Bock, and Item 1 attached thereto.

XIII.

On June 5, 2021, Couvillion and White Marlin executed a Day Rate Proposal containing Couvillion's estimated scope of work, personnel and equipment required, estimated time to prepare and mobilize, proposed day, lump sum and hourly rates, and estimated total day working rate, attached hereto as Exhibit "A." On July 26, 2021, White Marlin and Couvillion executed a Master Service Agreement ("MSA") governing Couvillion's work for White Marlin, attached hereto as Exhibit "B." An earlier version of this MSA was drafted with, among others, Agua as one of the parties. The Day Rate Proposal and MSA were signed, on behalf of White Marlin, by Richard Watson, who identified himself as the VP of Operations for White Marlin, and upon information and belief, Torrent and Agua, upon information and belief represented that he had authority to bind Talco to these agreements. As such, each entity had the obligation to pay for services performed by Couvillion pursuant to these agreements. Further, in connection with finalizing the MSA, White Marlin provided a Certificate of Insurance, which identified Talco as the insured, and White Marlin as an additional Named Insured.

XIV.

The MSA executed between Couvillion and White Marlin contains the following forum selection clause:

> 31. **APPLICABLE LAW/JURISDICTION AND VENUE.** This MSA and all matters arising out of or relating to this MSA, including tort and statutory claims are governed by, and construed in accordance with the General Maritime Law of the United States. In the event the General Maritime Law of the United States is held

5

inapplicable by a court or tribunal, this MSA and all matters arising out of or relating to this MSA, including tort and statutory claims are governed by, and construed in accordance with the laws of Texas, without giving effect to any conflict of laws provisions thereof that would result in the application of the laws of a different jurisdiction.  Any suit or proceeding hereunder will be brought exclusively in the United States District Court for the Southern District of Texas – Houston Division. Each Party hereby consents to the personal jurisdiction of said Court and waives any objection that such Court is an inconvenient forum.

XV.

Beginning on July 26, 2021, at the direction of Richard Watson and Defendants' representatives, Couvillion performed pipeline removal work and other services for the benefit of Defendants White Marlin, Agua, Talco, Torrent and Solida pursuant to the Day Rate Proposal and the MSA.  To perform this work, Couvillion hired numerous subcontractors to assist with the pipeline removal work and other services.

XVI.

Upon commencing work, Couvillion became aware that the site conditions varied extensively from those originally represented by Defendants in the bid process and thereafter. For example, the proposed pipeline cut locations were off by as much as 30 feet, and were significantly deeper than Defendants originally represented to Couvillion.

XVII.

As a result of these substantially differing site conditions, Couvillion was compelled to make modifications to its initial operations plan, schedule and equipment to further the project.  At all times, Couvillion kept representatives of Defendants fully apprised of its necessary adjustments caused by the issues involved in addressing the site conditions.  These changes were discussed daily and in-depth with the on-site representatives of Defendants with no objection by such representatives.

XVIII.

On September 13, 2021, Couvillion submitted an invoice (Invoice No. 204144) to White Marlin in the amount of $1,448,966, with supporting documentation, which reflected Couvillion's charges for day rates, lump sum and/or extra work, equipment, transportation, dock services, and personnel from July 26, 2021 to September 11, 2021.  *See* Item 1 attached to Affidavit of Michael Roy, attached hereto as Exhibit C.

XIX.

On October 19, 2021, Couvillion submitted an invoice (Invoice No. 204255) to White Marlin in the amount of $651,701.11, with supporting documentation, which reflected Couvillion's charges for day rates, lump sum and/or extra work, equipment, transportation, dock services, and personnel from September 12, 2021 to September 26, 2021.  *See* Item 2 attached to Affidavit of Michael Roy, attached hereto as Exhibit C.

XX.

Despite amicable demand, to date, Defendants have not paid any portion of Invoice No. 204144 for $1,448,966 or Invoice No. 204255 for $651,701.11, for a total outstanding balance associated with this project of $2,100,667.11.

XXI.

Defendants, themselves or through their representatives, made false statements to Couvillion to induce it to perform as Defendants failed to pay statements owed to Couvillion. These include but are not limited to

1. Richard Watson and White Marlin/Agua/Talco/Torrent's representatives misrepresenting the site conditions, which varied extensively from those originally represented by Defendants in the bid process and thereafter, to induce Couvillion to perform additional work for which they did not intend to compensate Couvillion;

7

2. Richard Watson and White Marlin/Agua/Talco/Torrent's representatives advising Couvillion that it would be paid in full for its work to induce Couvillion to perform its work; and

3. Richard Watson and White Marlin/Agua/Talco/Torrent's representatives advising Couvillion that it would be paid in full, with knowledge of the fact that Defendants did not have the funds necessary to fully compensate Couvillion for its work.

Couvillion reasonably relied on these representations, and agreed to perform the work, all while incurring significant expenses, including expenses from its subcontractors it hired to assist in the work. Unfortunately, these representations were false, and Defendants have failed to compensate Couvillion in full. Defendants had no intention of performing their obligations to Couvillion at the time of these representations, but intended Couvillion to act on these false, material representations. Defendants acted either with knowledge that their representations were false or with reckless disregard for the truth of their representations. Couvillion suffered injury as a result of Defendants' misrepresentations, all as described herein and below.

XXI.

Since filing suit, White Marlin/Agua Tranquillo/Torrent Oil/Talco/Solida's representatives have told Couvillion that Defendants do not have the resources to pay Couvillion any money towards the amounts owed. Upon information and belief, Solida has organized and managed these entities in such a manner that Defendants never had the financial resources to pay Couvillion for the work being performed and defrauded Couvillion out of its work. Instead, Defendants contracted with Couvillion to perform the work and promised to pay Couvillion for the work while not having any means to pay in full for the substantial work Couvillion, and its subcontractors, performed. Upon information and belief, Solida, himself and through the acts of his representatives, used White Marlin, Agua, Torrent and Talco as tools/business conduits of

8

each other, for the purpose of perpetrating an actual fraud on Couvillion for Solida's own personal benefit, to avoid his legal obligation to pay Couvillion for the work Couvillion performed.

XXII.

White Marlin, Agua, Torrent and Talco are related entities, and are all operated as essentially the same company. All were involved in directing Couvillion's work and receiving the benefit of Couvillion's work. During the course of Couvillion's work on the Pipelines, White Marlin, Agua, Torrent and Talco were aware of Couvillion providing materials and performing labor, and accepted the benefit of Couvillion's work to the Pipelines. Therefore, Couvillion seeks recovery against White Marlin, Agua, Torrent, and Talco. Couvillion also seeks recovery against Solida through either the piercing of his corporate veil or an alter ego theory. Couvillion also seeks recovery against all Defendants for the fraud committed against it.

**COUNT ONE: BREACH OF CONTRACTS UNDER GENERAL MARITIME LAW AND TEXAS LAW**

XXIII.

Couvillion repeats and reallages the preceding paragraphs as if repeated verbatim herein.

XXIV.

As expressly agreed by White Marlin in the executed Day Rate Proposal, "[p]ayments of all invoices or undisputed portions of invoices will be in United States Dollars and are due within thirty (30) days of receipt of invoice. An interest invoice in the amount of one and one-half percent (1.5%) per month will be issued for invoices not paid within thirty (30) days."

XXV.

As expressly agreed by White Marlin in the MSA, "[f]or Work satisfactorily performed, [Couvillion] will submit invoices monthly . . . and invoices will be paid within thirty (30) days of receipt of same. If [White Marlin] disputes any item on [Couvillion's] invoice, [White Marlin] shall

9

notify [Couvillion] of the disputed item in writing within fourteen (14) days of receiving the invoice. The undisputed portion of the invoice, however, shall be paid within the stated payment period."

XXVI.

White Marlin also expressly agreed in the MSA that "[e]ither Party will be in default under the Agreement and any and all Work Orders hereunder if it . . . (i) materially breaches the Agreement . . . ."

XXVII.

Under both the General Maritime Law and Texas law, White Marlin's non-payment for the services rendered by Couvillion constitutes a clear breach of the terms of the contracts by which Couvillion furnished the above-described services to White Marlin.

XXVIII.

All conditions precedent required of Couvillion under the parties' contracts have been performed.

XXIX.

White Marlin further agreed in the MSA that "[i]f the Parties become involved in litigation or mediation arising out of this Agreement in which the services of an attorney or other expert are reasonably required, the substantially prevailing Party (giving due consideration to all relevant circumstances and not merely to which Party obtains a judgment or recovery in its favor) will be fully compensated for the cost of its participation in such proceedings, including court costs, expenses and the reasonable costs incurred for attorneys' fees and experts' fees. . . ."

XXX.

As a result of White Marlin's breach of its obligations to Couvillion, Couvillion has suffered damages in the amount of $2,100,667.11, and under the General Maritime Law and Texas law is

entitled to judgment requiring White Marlin to pay Couvillion this amount, along with interest, attorneys' fees, expenses, court costs, and further damage as to be established at trial.

### COUNT TWO: BREACH OF ORAL CONTRACT – WHITE MARLIN, AGUA, TORRENT, TALCO

XXXI.

Couvillion repeats and re-alleges the preceding paragraphs as if repeated verbatim herein.

XXXII.

Couvillion, White Marlin, Agua, Torrent and Talco are parties to a valid, enforceable oral agreement whereby Mr. Watson directed Couvillion to perform its services on behalf of White Marlin, Agua, Torrent and Talco.  Couvillion performed its obligations under the agreement. White Marlin, Agua, Torrent and Talco breached the agreement by failing to pay for Couvillion's services. Couvillion suffered damages as a result of White Marlin, Agua, Torrent and Talco's breach.

### COUNT THREE: SUIT ON SWORN ACCOUNT

XXXIII.

Couvillion repeats and re-alleges the preceding paragraphs as if repeated verbatim herein.

XXXIV.

As a separate cause of action, pursuant to Texas Rule of Civil Procedure 185, Couvillion maintains an action against Defendants for $2,100,667.11, based upon Couvillion's services rendered pursuant to the written and/or oral contracts described above.

XXXV.

Couvillion furnished services to Defendants.  The prices charged by Couvillion were just and true because they were according to the terms of a contract, and they were usual, customary, and reasonable.  Couvillion kept a systematic record of the transactions.  All lawful offsets, payments, and credits have been applied to the account.  The account remains unpaid.  The

damages are liquidated. Defendants owe $2,100,667.11 for the work performed. Attached as Items 1 and 2 to Exhibit C are the invoices reflecting these charges.

XXXVI.

Couvillion is filing this Amended Complaint under oath. *See* Affidavit of Michael Roy, attached hereto as Exhibit C.

XXXVII.

White Marlin, Agua and Talco's refusal to pay the $2,100,667.11 owed for the services Couvillion has timely and satisfactorily performed makes Defendants liable for the amounts due and owing.

XXXVIII.

Consequently, Couvillion is entitled to judgment and all further relief as provided by Texas Rule of Civil Procedure 185 and Tex. Civ. Prac. & Rem. Code § 38.001, including attorneys' fees and pre-judgment interest. *See* TEX. R. CIV. P. 185; TEX. CIV. PRAC. & REM. CODE § 38.001; TEX. FIN. CODE § 302.002.

**COUNT FOUR: ALTER EGO/DISREGARD OF CORPORATE VEIL AGAINST NIGEL SOLIDA**

XXXIX.

Couvillion repeats and re-alleges the preceding paragraphs as if repeated verbatim herein.

XL.

Couvillion further alleges that Nigel Solida is jointly and severally liable for the wrongful conduct of White Marlin, Agua, Torrent and Talco, because Solida intended to and did use these organizations to perpetrate an actual fraud on Couvillion by, among other ways, knowingly providing false information in order to induce Couvillion to agree to perform the work at issue while at the same time knowing that neither Solida nor any of these organizations had the resources to timely pay for this work. This fraud on Couvillion was perpetrated primarily for the personal benefit

12

of Solida who was able to avoid his legal obligation of paying Couvillion while using other resources of these entities to enrich Solida. Further, Couvillion affirmatively pleads that these corporate entities are being used by Solida as mere tools or business conduits of other organizations. As such, Solida is liable for the amounts owed to Couvillion.

## COUNT FIVE: FRAUD AGAINST ALL DEFENDANTS

XLI.

Couvillion repeats and re-alleges the preceding paragraphs as if repeated verbatim herein.

XLII.

Defendants, themselves or through their representatives, made numerous misrepresentations of fact to Couvillion to induce Couvillion to perform its work. These representations include the representations identified above. These false and misleading statements were knowingly made, were material, and were relied upon by Couvillion. Defendants' misrepresentations induced Couvillion to contract with Defendants, perform the work, and incur significant expenses, including expenses to third parties. The conduct of Defendants constitutes fraud and fraudulent inducement. Couvillion would further show that Defendants concealed or failed to disclose material facts within Defendants' knowledge, that Defendants knew that Couvillion did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendants intended to induce Couvillion to continue providing services by such concealment or failure to disclose. As a result of Defendants' fraud, Couvillion suffered actual damages.

XLIII.

Couvillion also seeks exemplary damages as a result of Defendants' fraud.

**COUNT SIX: NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS**

XLIV.

Couvillion repeats and re-alleges the preceding paragraphs as if repeated verbatim herein.

XLV.

In the alternative to fraud, Couvillion asserts a negligent misrepresentation claim against Defendants. The false representations made by Defendants, themselves or through their representatives, include the representations identified above, made in the course of Defendants' business in a transaction in which each Defendant had a pecuniary interest. Defendants failed to use reasonable care or competence in obtaining and communicating this information. These material misrepresentations were made in the scope of Defendants' business and were intended to induce and/or guide Couvillion's performance. Defendants' misrepresentations induced Couvillion to perform the work, stay on the project, and incur additional expenses. Couvillion suffered pecuniary damages by justifiably relying on the representations from these Defendants. As a result of Defendants' negligence, Couvillion suffered actual damages.

**COUNT SEVEN: QUANTUM MERUIT/UNJUST ENRICHMENT AGAINST WHITE MARLIN, AGUA, TORRENT AND TALCO**

XLVI.

Couvillion repeats and re-alleges the preceding paragraphs as if repeated verbatim herein.

XLVII.

This cause of action for quantum meruit is pled in the alternative to the causes of action set forth above.

XLVIII.

Couivllion provided valuable services to Defendants. Defendants accepted Couvillion's services. Couvillion gave Defendants reasonable notice that it expected compensation for the services that it provided. Defendants failed to pay Couvillion the reasonable value of the services performed and materials provided. Defendants owe $2,100,667.11 for the work performed, plus interest and Couvillion's reasonable and necessary attorneys' fees and costs incurred.

### COUNT SEVEN: INTEREST OWED AND ATTORNEYS' FEES

XLIX.

Couvillion repeats and re-alleges the preceding paragraphs as if repeated verbatim herein.

L.

As expressly agreed by White Marlin in the executed Day Rate Proposal, "[p]ayments of all invoices or undisputed portions of invoices will be in United States Dollars and are due within thirty (30) days of receipt of invoice. An interest invoice in the amount of one and one-half percent (1.5%) per month will be issued for invoices not paid within thirty (30) days." Accordingly, interest on each invoice is due and owing at a rate of 1.5% per month until paid, and Couvillion demands payment of same from Defendants.

LI.

In the alternative, Couvillion avers that under TEX. FIN. CODE § 302.002, interest on open accounts accrues at a rate of six (6) percent per annum, commencing on the 30th day on which the sum is due and payable. Couvillion is, therefore, entitled to prejudgment interest from the 30th day after each unpaid invoice became due and payable, until the date of judgment.

LII.

In addition, Couvillion has been required to employ counsel to represent its interests as a direct result of Defendants' wrongful conduct. Couvillion seeks recovery of all reasonable and

necessary attorneys' fees, expenses and costs of court as authorized by Texas law. See TEX. CIV. PRAC. & REM. CODE. ANN. § 38.001.

## PRAYER

**WHEREFORE**, Plaintiff, Couvillion Group, LLC prays that Defendants, White Marlin Operating Company, LLC, Agua Tranquillo Midstream LLC, Talco Petroleum, LLC, Torrent Oil, LLC, and Nigel Solida be duly served and cited to appear and after due proceedings had, that there be a judgment rendered in favor of Plaintiff and against Defendants, for all unpaid amounts due, together with pre-judgment and post-judgment interest, costs and attorneys' fees, plus such other, further and different relief as the Court deems just and proper.

Respectfully submitted,

**FRILOT L.L.C.**

*/s/ Colton V. Acosta*
**PATRICK J. MCSHANE T.A. (#19055)**
*Pro hac vice*
**DANICA BENBOW DENNY (#27376)**
*Pro hac vice*
**KATHLEEN P. RICE (#31291)**
*Pro hac vice*
**COLTON V. ACOSTA (#38121)**
*Pro hac vice*
1100 Poydras Street, Suite 3700
New Orleans, LA 70163-3600
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
E-mail: pmcshane@frilot.com
　　　　ddenny@frilot.com
　　　　krice@frilot.com
　　　　cacosta@frilot.com

*Counsel for Plaintiff, Couvillion Group, LLC*

**AND**

**RICHARD GORMAN LAW**

*/s/ Richard L. Gorman*

**Richard L. Gorman**
**State Bar No. 00784155**
**Federal I.D. 15685**
12335 Kingsride Ln. #354
Houston, TX 77024-4116
Telephone: (832) 725-4026
Facsimile: (281) 854-2200
E-mail:  rg@richardgormanlaw.com

*Local Counsel for Plaintiff, Couvillion Group, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of August, 2022, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all parties who participate in electronic filing by operation of the court's electronic filing system.

*/s/  Colton V. Acosta*
Colton V. Acosta

**NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS WILL BE SERVED UPON DEFENDANTS, TORRENT OIL, LLC AND NIGEL SOLIDA**