# WHITE MARLIN OPERATING COMPANY, LLC
## MASTER SERVICES AGREEMENT

**THIS AGREEMENT CONTAINS PROVISIONS RELATING TO ALLOCATION OF RISK, INCLUDING, BUT NOT LIMITED TO, INDEMNITY, RELEASE OF LIABILITY, AND INSURANCE REQUIREMENTS**

THIS MASTER SERVICES AGREEMENT ("MSA") is made effective as of___26th day of July_____, 2021 by and WHITE MARLIN OPERATING COMPANY, LLC, a Delaware limited liability company (collectively, "Company"), and Couvillion Group, a Delaware limited liability company, on behalf of itself and any subsidiary or affiliated entity which performs Work (collectively, "Contractor"). Company and Contractor are at times alternately referred to herein individually as a "Party" or collectively as the "Parties."

1. **SCOPE OF AGREEMENT.**

    1.1.    **The Work.** It is contemplated that from time-to-time Contractor will be requested by Company or its present or future affiliated entities to perform certain work and services ("Work"). Neither Company nor its affiliates will be obligated to request Contractor to perform any Work, and Contractor will not be obligated to accept requests to perform Work from either Company or its affiliates, but it is expressly understood and agreed that any and all Work requested by Company or its affiliates and accepted by Contractor will be controlled and governed by the provisions of this MSA. The term "Agreement" means this MSA as incorporated in a Work Order (defined below), and the term "Company" as used herein means the Company, parent or affiliated entity that issued the Work Order.

    1.2.    **Work Orders.** A request for Work ("Work Order") will be submitted to Contractor in writing. Each such request for Work will be deemed a two-party agreement between Company and Contractor and will be deemed to incorporate and will be subject to all the terms and conditions of this Agreement. When issued, such Work Orders are non-binding, negotiable offers and are subject to their express terms. Such offers become a binding Work Order only after Company and Contractor have mutually agreed to all material terms and conditions concerning the requested Work. Any affiliate of Contractor may enter into a Work Order with Company with respect to Work to be performed. Each Work Order, together with this Agreement, will be a separate contract from any other Work Order and the affiliate of Contractor executing the Work Order will be the Contractor for all purposes of such Work Order. The entity executing the Work Order with Company will be solely liable to Company with respect to the Work to be performed thereunder.

    1.3.    **Modifications.** Should the Parties enter into any Work Order especially prepared to provide for a particular job to be done by Contractor, then, except to the extent expressly modified in a writing signedby authorized representatives of both Parties which refers to the conflicting term of this Agreement, the terms of this Agreement will prevail with respect to any conflict between the terms of such Work Order and this Agreement. To acknowledge or document various events during the Work, a Party may from time to time sign the other Party's various forms, such as delivery tickets, labor tickets, bills of lading, purchase orders, and rental tickets,but terms and conditions included on such forms do not amend, modify, waive, or release any aspect of this Agreement unless expressly agreed to by a writing signed in accordance with this Section 1.3. No parol agreement of whatsoever nature entered into between Company's representative or representatives and Contractor will ever be deemed to alter or affect the provisions of this Agreement.

2. **PAYMENT.**

EXHIBIT
B
tabbies

2.1.     **Compensation.** Contractor will receive the compensation specified in the Work Order which is agreed to by Company and Contractor at the time the Work Order is accepted by Company.  Such payment by Company will be without prejudice to Company's rights subsequently to challenge the correctness thereof.

2.2.     **Invoicing.** Invoices will be submitted in such form and accompanied by such certification and documentation as Company may reasonably request. For Work satisfactorily performed, Contractor will submit invoices monthly, or more frequently (if Contractor elects) where Work Orders are completed mid- month, and invoices will be paid within thirty (30) days of receipt of same. If Company disputes any item on Contractor's invoice, Company shall notify Contractor of the disputed item in writing within fourteen (14) business days of receiving the invoice. The undisputed portion of the invoice, however, shall be paid within the stated payment period.

2.3.     **Contractor's Reports.**  When requested by Company, Contractor will maintain and provide true and correct reports covering any Work, materials, products and equipment furnished by Contractor for which Company is obligated to pay. The Company will prescribe any required reports and the frequency and format of Contractor's reports in a Work Order. The quantity, description and condition of any Work, materials, products and equipment furnished will be verified and checked by Contractor, and all delivery tickets will be properly certified as to receipt by Contractor's representative. Contractor must obtain approval of Company's representative prior to the purchase of materials, products or equipment for which Contractor will seek reimbursement by Company.

3.   **AUDIT.** Contractor will maintain, and will require any of Contractor's subcontractors to maintain, a true and correct set of records pertaining to all Work performed under each Work Order, including supporting documentation, for two (2) years following completion of the Work. Company may, at its expense, require Contractor, or any of Contractor's subcontractors, at any time within said two-year period to furnish sufficient evidence, with documentary support, to enable Company to verify the correctness and accuracy of payments to Contractor or such subcontractors. Company may, following written notice to Contractor or such subcontractor, audit any and all records of Contractor and any subcontractor relating to the Work performed by or on behalf of Contractor hereunder, and all payments made in regard thereto, in order to verify the accuracy and compliance with this provision. The Parties will promptly adjust and correct any errors determined to exist as a result of an audit or otherwise. Neither Company nor any of its representatives will be allowed access to Contractor's confidential, proprietary, or trade secret information.

4.   **INSPECTIONS.** All Work performed by Contractor must meet the approval of Company and will be subject to Company's general right of inspection. The inspection or non-inspection of any portion of the Work by Company will not constitute approval thereof. Company may, but is not required to, inspect and test all supplies, materials, products, or equipment, to the extent practical, at all times and places and from time to time, including, without limitation, while critical materials are available for inspection and while an item is at the place of fabrication or manufacture. Company's inspection and testing will not relieve Contractor from any responsibility regarding defects or other failures, or exclude, waive, or invalidate any warranty in this Agreement. Notwithstanding the foregoing, the detailed manner and method of performing the Work will be under the exclusive control of Contractor, Company's sole interest being only in the results obtained.

5.   **INDEPENDENT CONTRACTOR.** Company and Contractor expressly agree that Contractor is an independent contractor as to all Work performed under this Agreement and that Contractor, its subcontractors, and anyone employed by either Contractor or its subcontractors will not be deemed for any purpose to be an employee, agent, servant, or representative of Company. Contractor and its subcontractors will be solely responsible for any and all salaries, employee benefit plans, taxes, insurance, and any and all other compensation and

responsibilities for their respective employees. Contractor, its subcontractors and any of their employees will not be authorized to act or appear to act as agents or representatives of Company, whether in performing the Work or otherwise. If the performance of the Work will include the use by Contractor or its subcontractors of Company's facilities, equipment or other resources, such use is permitted only to the extent necessary for the performance of the Work and not for any other purpose. This Agreement does not create and will not be construed by the Parties or any third party as creating, any agency, partnership, joint venture, or employment relationship between the Parties.

6.   **TAXES, PERMITS, AND LICENSES.**

      6.1.     Unless otherwise agreed in writing by the Parties, Contractor will secure all necessary licenses and permits required to be issued and maintained in the name of Contractor for the performance of the Work to the extent specified in a Work Order, make all cash and other deposits, provide all bonds, and give all notices required either by law, regulation, ordinance, or permit in connection with any Work performed under this Agreement.

      6.2.     Unless otherwise agreed in writing by the Parties, Contractor will pay promptly when due, all license fees, and all sales, use, excise, and other taxes or charges (including any interest and penalties), now or hereafter imposed by any governmental body or agency upon any materials, supplies, equipment, or services provided by Contractor pursuant to the Agreement, as well as all unemployment compensation insurance, old age benefits, social security, or any other taxes upon the wages of Contractor. Unless otherwise agreed in writing by the Parties, Contractor will prepare and file promptly with the appropriate offices any and all tax and other similar returns required to be filed with respect to the Work and send copies thereof to Company. Contractor will reimburse Company on demand for all such taxes or governmental charges, state or federal, that Company may be required to pay on account of employees of Contractor or its subcontractors. At its election, Company is authorized to deduct all sums so paid for such taxes and governmental charges from such amounts as may be or become due to Contractor hereunder. If Company requests that Contractor import or export equipment, the associated customs, duties and clearance charges will be quoted for Company's account and will be the responsibility of Company.

7.   **CONTROL OF PREMISES.** Unless otherwise agreed by the Parties, Contractor will have at least one of its representatives present at and during all installation or maintenance of Work performed under the Agreement. Company may, in its sole discretion, request that Contractor, its subcontractors, or any of its or their respective employees or invitees be removed from the premises. If Company makes such a request, Contractor will remove such individual or individuals from Company's premises and not allow such individual(s) to return until such return is approved in writing by Company. Company may condition such individual's return upon the delivery by Contractor of satisfactory proof, in Company's sole discretion, that the individual (i) has tested negative for drugs and alcohol, and (ii) has met any other conditions Company may impose.

8.   **SUBCONTRACTING.** Subject to Article 25 of this MSA, in the event Contractor subcontracts any of the Work to be performed hereunder, or contracts for the furnishing of any services or material required, then such contracts will contain releases of liability for damage to property of such subcontractor, insurance requirements, and hold harmless provisions equivalent or substantially similar to Articles 14 and 15 of this Agreement. Unless such contracts contain such equivalent or substantially similar provisions, any personnel engaged and property used in the furnishing of such services or Work will be deemed employees and property of Contractor for the purpose of Articles 14 and 15 and for the purposes of all other provisions of this Agreement.

9.   **CONTRACTOR'S PERSONNEL, EQUIPMENT AND MATERIALS.**

9.1.    **Staffing.** Contractor will supply its own personnel of the type and number necessary to perform the Work. Contractor will, and will require its subcontractors to, provide personnel who are experienced, properly trained, qualified, able to perform their respective assignments, and, to the extent required, licensed to perform work pursuant to applicable law, regulations and orders. Company, in its sole discretion, may direct Contractor to remove or replace any of Contractor's personnel at Contractor's cost.  Contractor will make such replacement in a timely manner so as not to delay Company's operation, or delay or reduce the Work provided by Contractor.

9.2.    **Equipment.** Unless otherwise specified in the applicable Work Order or furnished by Company, Contractor and each of Contractor's subcontractors will, at its own expense, furnish all tools, equipment, machines, appliances, parts, material and supplies necessary for the performance of the Work. All tools, equipment, machines, appliances, parts, material and supplies furnished by Contractor or Contractor's subcontractors during the performance of the Work will be deemed to be Contractor's equipment. Unless otherwise agreed to in the applicable Work Order, all of Contractor's equipment will be delivered to the work site at Contractor's sole cost, risk and expense. At all times during the performance of the Work, Contractor's equipment will be in good working condition, properly maintained, free from defects in material and workmanship, and in compliance with all applicable laws, rules and regulations. Contractor must obtain approval of Company's representative prior to the purchase of materials, products or equipment for which Contractor will seek reimbursement by Company.

9.3.    **Warranty of Goods.** Contractor warrants that product (including but not limited to equipment, tools, supplies and materials, including service-related materials) furnished by it hereunder will be new or like new, will be free from defects in design (if designed by Contractor), workmanship, and materials, and will comply with all applicable laws, regulations, codes (governmental and industry) and generally accepted standards (governmental and industry).  The product warranty period will be twelve (12) months from the date of delivery. The product warranty period will end at midnight on the last day of the month in which the warranty expires. Minor warranty work will not extend the warranty period. Material warranty work will be warranted as a new item with a new warranty period. If Company sends a written defect notice during the warranty period and Contractor receives the same within the warranty period or within three (3) business days after the warranty period, then the warranty will be honored. Contractor will promptly cure all warranted defects. If Contractor fails to so cure such defects within a reasonable time after being notified, Company may cure such defects directly or through another contractor. Within thirty (30) days after receipt of a written invoice, Contractor will reimburse Company for the reasonable, documented cost actually incurred by Company for such warranty work. The provisions of this Agreement applicable to Contractor's invoices to Company will also apply to Company's invoices to Contractor.

9.4.    **Warranty of Performance.** Contractor represents and warrants that it will perform the Work (i) diligently; (ii) in a thorough, safe, good, and workmanlike manner; and (iii) in a manner that is in full compliance with the Agreement and the most current applicable laws, codes and generally accepted industry standards, rules, regulations. Contractor will correct any warranted deficiencies with the Work within twelve (12) months from completion of the Work following notice of the deficiency. Contractor represents and warrants that it has the experience, skill, and ability in such fields and related disciplines as may be necessary to perform all Work required by this Agreement. Contractor acknowledges that Company is relying on Contractor's skill and experience for the performance of this Agreement, and agrees to notify Company whenever Contractor does not have the necessary skill and experience to fully perform hereunder. The Company will (and unless otherwise expressly provided otherwise in a Work Order) have any new structures or equipment, or modifications of existing structures or equipment surveyed outside of the Work Order and be responsible for any as-built drawings, data books or manufacturers' operating documentation necessary to allow Company to operate, maintain, and repair such structures or

equipment. Notwithstanding the foregoing, the warranty period for any pressure testing, hydro-testing, flushing, cleaning, pigging or drying services shall terminate upon completion by Contractor and acceptance by Company of the specific pressure test, hydro-testing, flushing, cleaning, pigging or drying services performed. **NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, EXCEPT FOR THOSE WARRANTIES EXPRESSLY PROVIDED FOR UNDER THIS ARTICLE 9, CONTRACTOR MAKES NO OTHER WARRANTY OR GUARANTEE OF ANY KIND, STATUTORY, AT LAW, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, REGARDING ANY SERVICES OR WORK PERFORMED OR GOODS, EQUIPMENT, MATERIALS, OR PRODUCTS SUPPLIED HEREUNDER, AND ALL SUCH OTHER WARRANTIES ARE HEREBY EXPRESSLY WAIVED AND DISCLAIMED.**

9.5.     **Infringement Warranty.** Contractor warrants that all Work performed by Contractor for or on behalf of Company, and all goods or other deliverables produced thereby, will not violate, infringe or misappropriate the rights of any third parties, including, without limitation, the copyright, trademark, patent, intellectual property or the trade secrets of any third person. Notwithstanding the foregoing, Contractor shall not be responsible or liable for any infringement arising from: (i) Company's instructions or specifications, (ii) Company's modification of the Work, goods, equipment or services furnished by Contractor, or (iii) Company's use thereof with other goods, equipment or services not furnished by Contractor, and Contractor assumes no liability whatsoever for any infringement Claims resulting therefrom and Company will hold Contractor harmless from and against any infringement claims arising therefrom.

9.6.     **Repair, Replacement or Correction.** Any goods or equipment furnished by Contractor hereunder or any portion of the Work which is defective will, provided such defect occurs during the applicable warranty period, be removed, replaced or corrected by Contractor promptly upon receipt of written notice thereof at no additional cost to Company.

## 10. HEALTH, SAFETY AND ENVIRONMENTAL.

10.1.     **Protection.** Contractor will be responsible for the safety of its employees, subcontractors, consultants and agents, as well as its subcontractors' employees and agents and their respective invitees and guests. While performing Work at Company's work site, Contractor will provide continuous adequate protection of the Work and will take reasonable precautions to keep and maintain the workplace free from recognized hazards which are likely to cause death, illness or injury to persons or damage to property. Contractor warrants that it will be subject to and cause its employees, agents, representatives, subcontractors and others under its control during the performance of the Work or in connection therewith to be subject to all applicable safety, health and environmental rules and all applicable provisions of national, state or local safety, health and environmental laws, rules, regulations or orders. Contractor will at all times maintain strict discipline and good order among the employees, agents, and representatives of Contractor and Contractor's subcontractors and others under Contractor's control. Copies of Contractor's incident logs and safety performance records will be provided to Company upon request.

10.2.     **Rules and Equipment.** Contractor will not commence the Work if Contractor has not familiarized itself and agrees to comply with Company's safety, health and environmental rules that have been delivered or otherwise made available to Contractor. In addition, Contractor will obtain all required safety equipment prior to commencement of Work. Company will be under no obligation to pay Contractor any amount when Contractor, its employees or subcontractors are not permitted to perform Work due to lack of required safety equipment.

10.3.     **Training.** Contractor will ensure that its employees, agents and subcontractors have received all applicable training in the rules and procedures regarding hazardous materials applicable to the Work, including

the identification, handling, labeling, packaging, loading, transporting, unloading, storing and disposal of such materials and substances, as required by U.S. Department of Transportation Hazardous Materials Regulations, 49 C.F.R. Parts 171-177. Contractor will maintain all required documentation to verify such training and will make such documents available upon request.

10.4.   **Incident Reporting.** Contractor will report to Company as soon as practicable, all incidents or occurrences resulting in injuries to persons or damage to property in any way arising out of or related to Contractor's operations or the operations of any subcontractor of Contractor while preparing for or performing Work. When requested, Contractor will promptly provide Company with a copy of all non-privileged reports relating to such incidents or occurrences prepared by Contractor, or on behalf of Contractor to Contractor's insurer or to others, including but not limited to, any governmental or quasi-governmental agency or authority (and Company will similarly provide incident reports to Contractor involving or relating to the Work). Contractor will report to Company as soon as practicable all occurrences resulting in discharge or spill of produced water, hydrocarbon or other substance. Subject to Section 15.4, Contractor will make all reasonable efforts to immediately stop the source of any spill or release, prevent the contaminant from spreading and remove all contaminant practicable. Contractor will complete a report of loss form and will retain a log of all spills. To the extent required by law, Contractor will report to the appropriate state, federal or local agency or agencies any spill or discharge of a hazardous, extremely hazardous or toxic substance or other pollutant within the time provided by applicable laws, rules, codes or regulations of any federal, state or local agency or agencies. Contractor will promptly report to Company of such regulatory communications and provide Company with a copy of any documents provided. When requested, Contractor will promptly provide Company with a copy of all non- privileged reports made by Contractor to Contractor's insurer or to others of such accidents or occurrences.

10.5.   **Materiality.** Sections 10.1, 10.2, and 10.3 are agreed to by both Company and Contractor to be of the highest importance. A breach or violation of any of the terms of Article 10 by Contractor will be considered to be a material and substantial breach of this Agreement. If Contractor fails to promptly cure any such breach or violation or to otherwise comply with Article 10 of this Agreement, Company may suspend Contractor's performance of the Work or any part thereof until such time as Contractor is in full compliance with the terms of this Agreement. All costs and expenses incurred by Contractor during or as a result of such suspension will be the sole responsibility of Contractor. Company's failure to notify Contractor in accordance with this paragraph will not act as a release or waiver of Contractor's obligation to comply with all provisions of this Agreement. If Contractor fails to correct or remedy any deficiency within a reasonable time after having been notified of such deficiency, then Company will have the right, but not the obligation, to correct or remedy such deficiency at Contractor's sole cost and expense. Further, Company will have the right to offset any amount owing to Contractor under this Agreement by an amount equal to the cost of correcting such deficiency. Company may seek removal of Contractor as provided in this Agreement or the applicable Work Order and may take any other action permitted by the terms of this Agreement, including its termination.

11. **DRUGS, DANGEROUS WEAPONS AND SEARCHES.** Contractor acknowledges that the use, possession, distribution, or sale of illegal drugs and controlled substances including, without limitation, alcohol and firearms in and around the work site is absolutely prohibited. Company specifically reserves the right to carry out reasonable searches of individuals, their person, effects and vehicles when entering on, or leaving, the work site. Contractor acknowledges that the refusal to submit to such a search is grounds for denying such individual access to the work site. Contractor acknowledges that individuals found in violation of this policy will be immediately removed from the work site, and, when warranted, such individuals will be reported to the appropriate law enforcement agencies. Company has the right to request random drug testing of Contractor personnel.

12. **DAMAGED PROPERTY.** Except in emergency situations, Contractor will not remove any damaged Company property from Company's premises without the prior written consent of Company.

13. **EQUAL EMPLOYMENT OPPORTUNITY.** Contractor and its subcontractors will comply with all equal employment opportunity statutes, rules, and regulations promulgated by the federal, state and local governments (or take steps to comply with any affirmative action requirements where the Work is in support of or relates to government contracts), including but not limited to Executive Order 11246, the Rehabilitation Act of 1973, the Vietnam Era Veterans Readjustment Act of 1972, the Americans with Disabilities Act, and the Age Discrimination in Employment Act.

14. **INSURANCE.**

14.1.    **General.** As to all Work performed under this MSA and as a separate and independent obligation hereunder, the Parties will secure and maintain during the term of this Agreement, at a minimum, insurance coverage in full compliance with all requirements described on the attached and incorporated Exhibit A. Terms used in Exhibit A shall have the meaning ascribed thereto in this Agreement.

14.2.    **Texas Provision.** This Section 14.2 will apply only in the event and to the extent the Work pertains to a well for oil, gas, or water or drilling for minerals as defined in TEX. CIV. PRAC. & REM. CODE § 127.001(1) located in Texas or its territorial waters. Separate and independent from any other insurance procurement requirements in this Agreement, each of Company and Contractor agree to carry insurance in support of their respective indemnity obligations under Article 15 in mutually-agreed, equal amounts. Each Party agrees that the mutual amount of such supporting insurance will be equal to the requirements of Exhibit A. If a Party does not carry or fails to maintain insurance as mutually agreed, such Party will be deemed to be self-insured in an amount equal to the amount of insurance carried by the other Party in compliance with this Section 14.2.

14.3.    **Louisiana Provision.** In all cases where Contractor's employees (defined to include Contractor's borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act, La. R.S. 23:1021 *et seq.*, Company and Contractor agree that all Work and operations performed by Contractor and its employees pursuant to this Agreement are an integral part of and are essential to the ability of Company to generate Company's goods, products and services for purposes of La.
R.S. 23:1061 (A)(3). Irrespective of Company's status as the statutory employer or special employer (as defined in La. R.S. 23:1031(C)) of Contractor's employees, Contractor will remain primarily responsible for the payment of Louisiana workers' compensation benefits to or for its employees and will not be entitled to seek contribution for any such payments from Company.

Company and Contractor agree that with respect to all non-maritime Work performed for Company by Contractor under the Agreement in or offshore from the State of Louisiana, if any, Company will pay to Contractor's insurers the premium required by Contractor's insurers for extending Contractor's insurance policies (described on Exhibit A) to cover Company Group (as defined below) by naming Company Group as additional insured, waiving subrogation against Company Group, and affording primary coverage with respect to any other coverage in favor of Company Group for liability assumed by Contractor under the Agreement, and such insurance protection shall be governed by Louisiana law, and not by the parties' choice of law provision set forth in Article 31 below. Contractor will arrange to have Company billed for the premium required by Contractor's insurers. Contractor's agent will notify Company prior to the commencement of Work under the Agreement of the cost of such premium. Contractor will notify Company prior to the commencement of Work under this Agreement if such premium will be in excess of One Thousand U. S. Dollars (US$1,000.00) per any annual policy period or portion thereof. Contractor agrees to cause the issuing agent to confirm to

Company that such amount constitutes the full cost of extending such insurance protection to Company Group under the Agreement. Contractor further agrees that it will obtain a letter from its insurers confirming the extension of insurance coverage in favor of Company Group in accordance with the requirements set forth herein. If Contractor so elects, the reciprocal of this paragraph will apply for the benefit of Contractor (i.e., Contractor paying Company's insurer's premium for extending Company's insurance policies (which will be the same as Exhibit A)) to ensure that the *Marcel* exception is applicable to both Contractor and Company.

15. **INDEMNIFICATION.**

15.1. **Definitions.**

A. "Claims" means any and all claims, losses, damages, causes of action, fines, penalties, enforcement proceedings, suits, demands and liabilities of every nature or character (including interest and all expenses of litigation, court costs, and reasonable attorneys' fees), whether or not arising in tort, contract, strict liability, under statute, or of any other character whatsoever, and whether or not caused by a legal duty.

B. "Contractor Group" means, individually or in any combination, Contractor, its parent, subsidiaries and affiliates, and its and their co-owners, contractors and subcontractors, agents, representatives, and each of their respective officers, directors, members, managers, owners, insurers, invitees, consultants and employees (including their spouses, dependents, relatives, heirs and legal representatives).

C. "Company Group" means, individually or in any combination, Company, its parent, subsidiaries and affiliates, and its and their co-owners, co-lessees, joint interest owners, contractors and subcontractors (excluding Contractor Group), agents, representatives, and each of their respective officers, directors, members, managers, owners, insurers, invitees, consultants and employees (including their spouses, dependents, relatives, heirs and legal representatives).

15.2 **Contractor's General Indemnification.** Subject to Section 15.7, Contractor agrees to and will release, indemnify, defend, and hold harmless Company Group from and against any and all Claims that are brought by or on behalf of any person or entity which arise out of, relate to, or are connected with the Agreement or the performance hereof and relate to: (i) the personal injury, bodily injury, illness, or death of any member of Contractor Group; (ii) damage to or loss or destruction of any real or personal property owned, leased, rented or hired by any member of Contractor Group; (iii) subject to Section 15.4, Contractor Group's violation of any applicable governmental laws, regulations, ordinances, permits, licenses, or orders; or (iv) Contractor Group's infringement, dilution, misappropriation, or other violation of the copyright, trade secret, trademark, trade dress, service mark, patent, or any other proprietary right of any person or entity..

15.3 **Company's General Indemnification.** Subject to Section 15.7, Company agrees to and will release, indemnify, defend, and hold harmless Contractor Group from and against any and all Claims that are brought by or on behalf of any person or entity which arise out of, relate to, or are connected with the Agreement or the performance hereof and relate to: (i) the personal injury, bodily injury, illness, or death of any member of Company Group; (ii) damage to or loss or destruction of any real or personal property owned, leased, rented or hired by any member of Company Group; (iii) subject to Section 15.4, Company Group's violation of any applicable governmental laws, regulations, ordinances, permits, licenses, or orders; or (iv) Company Group's infringement, dilution, misappropriation, or other violation of the copyright, trade secret, trademark, trade dress, service mark, patent or any other proprietary right of any person or entity.

15.4     **Pollution and Contamination**: Notwithstanding anything to the contrary contained herein, it is understood and agreed by and between Contractor and Company that the responsibility for pollution and contamination will be as follows:

(A)     Unless otherwise provided herein, Contractor will assume all responsibility for, including control and removal of, and protect, defend, indemnify and save Company Group harmless from and against all Claims arising from pollution or contamination, including naturally occurring radioactive material (NORM) which originates above the surface of the land or water from spills of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, bilge and garbage, except unavoidable pollution from reserve pits, emanating from Contractor's Group's equipment and property while in Contractor Group's care, custody, and control.

(B)     Company will assume all responsibility for, including control and removal of, and protect, defend, indemnify and save Contractor Group harmless from and against all Claims arising directly or indirectly from all other pollution or contamination (including NORM found in Company's facilities or pipelines and the actions of Company's other contractors) which may occur during the conduct of operations hereunder, including, but not limited to, that which may emanate from Company Group's property, equipment or facilities or result from fire, blowout, cratering, seepage or any other uncontrolled flow of oil, gas, water or other substance, as well as the use or disposition of oil emulsion, oil base or chemically treated drilling fluids, contaminated cuttings or caving's, lost circulation and fish recovery materials and fluids.

15.5     **Texas Provision**. To the extent dictated by the Texas Oilfield Anti-Indemnity Act, either Party's obligations of indemnity for the other Party's sole or concurrent negligence will be limited to the insurance carried by such Party pursuant to this Agreement, otherwise, such indemnity will be without limitation. If either Party does not carry insurance in the minimum amounts as specified in the insurance requirements in regard to the mutual oilfield indemnity obligations, then it is agreed that the Party without such insurance has qualified self-insurance as stated in the Texas Oilfield Anti-Indemnity Act and the mutualindemnification amount will be the maximum amount carried by the other Party pursuant to Section 14.2.

15.6     **Provision for All States.** If this Agreement is judicially determined to be subject to the laws of any state purporting to limit indemnity obligations in contracts, then this Article 15 is hereby modified to the extent necessary for enforceability under the laws of such state in order to give force and effect, to the maximum extent possible, to the liability and indemnification structure contained herein.

15.7     **Express Negligence. THE RELEASE, INDEMNITY, DEFENSE, AND HOLD HARMLESS OBLIGATIONS CONTAINED IN THIS ARTICLE 15 WILL APPLY EVEN IF THE CLAIMS ARE CAUSED, IN WHOLE OR IN PART, BY THE JOINT, SOLE, OR CONCURRENT NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT, WHETHER PASSIVE OR ACTIVE, OF ANY PERSON OR ENTITY, INCLUDING BUT NOT LIMITED TO THE GROUP INDEMNIFIED IN THIS ARTICLE 15.** BOTH PARTIES AGREE THAT THIS STATEMENT COMPLIES WITH THE REQUIREMENT KNOWN AS THE EXPRESS NEGLIGENCE RULE, TO EXPRESSLY STATE IN A CONSPICUOUS MANNER AND TO AFFORD FAIR AND ADEQUATE NOTICE THAT THIS ARTICLE HAS PROVISIONS REQUIRING ONE PARTY TO BE RESPONSIBLE FOR THE NEGLIGENCE, STRICT LIABILITY, CONTRACTUAL LIABILITIES TO THIRD PARTIES, OR OTHER FAULT OF ANOTHER PARTY. **THE CONTRACTUAL DEFENSE AND INDEMNITY REQUIREMENTS WILL ALSO BE PRIMARY TO ANY INSURANCE ON WHICH THE INDEMNIFIED GROUP IS NAMED AS INSURED, INCLUDING THAT INSURANCE REQUIRED UNDER ARTICLE 14 INCLUSIVE.**

15.8     **IN NO EVENT SHALL CONTRACTOR'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND ALL WORK ORDERS UNDER SAME, WHETHER ARISING OUT OF OR RELATED TO**

BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EXCEED $2,000,000.

15.9     **Survival.** All indemnity provisions of the Agreement will survive termination, expiration, or cancellation of the Agreement.

16.     **WAIVER OF CONSEQUENTIALS.** NOTWITHSTANDING ANY PROVISION HEREIN TO THE CONTRARY, NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY OR ITS GROUP FOR, AND EACH PARTY RELEASES THE OTHER PARTY AND ITS GROUP FROM, ANY OF ITS OWN INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOSS OF PROFIT, LOSS OF USE, LOSS OF REVENUES, PRODUCTION LOSS, AND RESERVOIR DAMAGES, HOWSOEVER CAUSED, REGARDLESS OF WHETHER SUCH DAMAGES OR LOSSES ARISE OR RESULT, IN WHOLE OR IN PART, FROM NEGLIGENCE (WHETHER SUCH NEGLIGENCE BE SOLE, JOINT AND/OR CONCURRENT, ACTIVE OR PASSIVE), STRICT LIABILITY, CONTRACT BREACH, BREACH OF WARRANTY, OR ANY OTHER THEORY OF LEGAL LIABILITY ATTRIBUTABLE TO THE RELEASED PARTY OR ITS GROUP.

17.     **PROTECTION FROM LIENS.** With respect to the Work provided under the Agreement, Contractor will timely pay and discharge all claims for labor, materials, equipment and supplies furnished by any member of Contractor Group and will allow no lien or charge to become fixed upon all or any portion of Company Group's property (except as provided below). Contractor will defend, indemnify and hold harmless each member of Company Group against any and all such claims or liens and all expenses (including reasonable attorneys' fees) incurred by any member of Company Group in connection with this Article 17. Before Company makes payments to Contractor, Company may require Contractor to furnish a lien release (conditional on actual payment for the Work). **CONTRACTOR HEREBY WAIVES AND RELEASES ALL CLAIMS, DEMANDS, LIENS, SECURITY INTERESTS, AND OTHER RIGHTS OF EVERY KIND AND CHARACTER, WHETHER CONSTITUTIONAL, STATUTORY, CONTRACTUAL, TORTIOUS, OR EQUITABLE, WHICH CONTRACTOR NOW HOLDS OR MAY ACQUIRE IN, ON OR AGAINST ALL OR ANY PORTION OF COMPANY GROUP'S PROPERTY, EXCEPT FOR CLAIMS AND LIENS OF CONTRACTOR RELATING TO (i) BALANCES DUE AND PAYABLE UNDER ANY OF CONTRACTOR'S INVOICES or
(ii) DAMAGE OR LIABILITY INCURRED AS A RESULT OF COMPANY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.**

18.     **CONFIDENTIALITY.** Except as otherwise provided herein, Contractor and Company agree that any and all information that is not otherwise publicly available (other than as a result of unauthorized disclosure) and is communicated by one party ("Disclosing Party") to the other party ("Receiving Party"), including, without limitation, operational, engineering, geophysical, geological, marketing and financial information, information regarding the nature, results and location of the Work and the other party's processes and procedures, whether such information be written, oral or in electronic format ("Confidential Information") will be confidential and will be treated as such and held in strict confidence by Receiving Party. Confidential Information will be used only for purposes of the Agreement by Receiving Party, and no information, including, without limitation, the provisions of the Agreement, will be disclosed by the Receiving Party, its agents or employees, without the prior written consent of the Disclosing Party, except as may be necessary by reason of legal, accounting or regulatory requirements beyond the reasonable control of the Receiving Party. The Receiving Party will safeguard Confidential Information with at least the same degree of care that it uses to safeguard its own confidential, proprietary, privileged and trade secret information. This Article 18 will not apply to information (i) in the public domain, (ii) the Receiving Party had in its possession prior to receiving it from the Disclosing Party (as evidenced by dated documentation), (iii) the Receiving Party obtained from a third party who rightfully acquired such information, or (iv) the Receiving Party independently developed without reference to the information received from the Disclosing Party (as evidenced by dated documentation). If the ReceivingParty must disclose any Confidential Information pursuant to applicable law or regulation or by operation

of law, the Receiving Party may disclose only such information as, in the opinion of counsel, is legally required, and provided, further, that the Receiving Party will provide reasonable notice to the Disclosing Party of such requirement and a reasonable opportunity to object to such disclosure. Notwithstanding anything elsewhere in the Agreement, the terms of this Article 18will apply to Confidential Information amounting to a trade secret for as long as such information remains a trade secret under applicable law and will survive the termination of the Agreement.

19.    **GIFTS AND CONFLICTS OF INTEREST.**

19.1.    Contractor will not offer to Company's employees, representatives or agents, any commission, fee, rebate or gifts and favors of significant cost or value beyond common business practices in connection with the Work, equipment or materials covered by this Agreement.

19.2.    Company may at any time during the term of this Agreement and the two (2) year period following completion of any Work provided by Contractor hereunder, audit any and all records of Contractor, Contractor's affiliated entities, and Contractor's subcontractors for the purpose of determining whether there has been a violation of this Article 19.

20.    **COMPLIANCE WITH LAWS.** Contractor will comply with the provisions of all applicable federal, state, county, or municipal laws, regulations or ordinances. However, as between Company and Contractor, Company will be responsible for obtaining any and all authorizations from any applicable governmental authority that may be required for the Work, with the exception of the following which will be Contractor's responsibility: discharge permit (i.e., General Permit to Dispose of Hydrostatic Test Water) with the Texas Commission of Environmental Quality ("TCEQ").

21.    **TERM AND TERMINATION OF MSA.** This MSA will become effective upon execution by Contractor and Company and will continue in force and effect until thirty (30) days following delivery by either Company or Contractor of written notice of termination to the other; provided, however, that any Work that that hasbeen agreed to in a Work Order executed prior to the effective date of such termination notice will be controlled and governed by this MSA until its completion to Company's reasonable satisfaction. Termination of this MSA does not terminate Work being performed pursuant to a Work Order absent termination of the Work Order itself.

22.    **CANCELLATION OF WORK.** Company may at any time and for any reason cancel any Work Order, in whole or in part, by giving notice to Contractor. If Contractor is not in default at the time of such cancellation, Company will pay Contractor for Work actually provided by Contractor to the termination date specified in the cancellation notice, and for those costs actually incurred as a result of such early cancellation, including but not limited to demobilization costs. If Contractor is in default at the time of cancellation, Company will pay Contractor for Work actually provided by Contractor up to the termination date specified in the cancellation notice, less any amount of documented direct costs actually incurred by Company as a result of Contractor's default.

23.    **EVENTS OF DEFAULT.** Either Party will be in default under the Agreement and any and all Work Orders hereunder if it (after failing to cure same ten (10) days after receipt of notice of same) (i) materially breaches the Agreement, (ii) becomes insolvent, (iii) makes an assignment for the benefit of creditors, (iv) is adjudicated bankrupt, (v) admits in writing its inability to pay debts as they become due, (vi) institutes any proceeding for relief of debtors or appointment of a receiver, trustee, or liquidator, (vii) institutes a voluntary petition in bankruptcy, or (viii) subject to Section 17, fails to remove within thirty (30) days any attachment which is levied upon the other Party's equipment or property. The defaulting Party will immediately notify the

other Party upon discovery of any instance where it failed to comply with the provisions of the Agreement, or if any information provided was inaccurate, incomplete, or misleading.

24.   **FORCE MAJEURE.** Neither Company nor Contractor will be liable to the other Party for any delays or damages or any failure to act owing to, occasioned or caused by reason of federal or state laws or the rules, regulations or orders of any public body, or any official purporting to exercise authority or control respecting the work or services covered hereby, including the use of tools and equipment, or owing to, occasioned or caused by strikes, lockouts, fire, flood, hurricanes, named storms, the elements or other causes beyond the control of the parties affected thereby, and delays due to any of the above causes will not be deemed to be a breach or failure to perform under this Agreement; provided, however the party delayed by such event will provide notice thereof to the other party as soon as reasonably possible specifying all facts relating thereto, the anticipated consequences thereof, and any proposed actions to be taken in mitigation of adverse consequences. Force majeure will not be an excuse to the failure to timely pay monies owed under the Agreement.

25.   **ASSIGNMENT.** Contractor acknowledges that Company has entered into this MSA and each Work Order because of the unique technical abilities, capabilities, and credit worthiness of Contractor. Therefore, Contractor may not assign this MSA or any Work Order (other than to an affiliate) or any rights obtained hereunder or delegate or subcontract any duty of performance owed by Contractor hereunder without the prior written approval of Company, which approval will not be unreasonably withheld, conditioned or delayed. Company may assign this MSA or any Work Order upon notice to Contractor, provided that Company can demonstrate that the assignee has the financial strength required to fulfill Company's obligations under the Agreement. Any assignment made in contravention of this Article will be null and void for all purposes. In all events Contractor, as assignor, will remain liable for its obligations under this MSA and any Work Order. To the extent that there are successors or assigns permitted under this Article, each Agreement will be binding on and inure to the benefit of the Parties and their respective successors and assigns. Notwithstanding the foregoing, Contractor may subcontract all or any portion of the Work to Couvillion Group, L.L.C. or its affiliates.

26.   **DISPUTE RESOLUTION.** If a claim, controversy or dispute arises out of or is related to this Agreement, or the breach thereof, and if said dispute cannot be settled through direct discussions, upon notice signed by a member of senior management of either of the Parties, the Parties agree to submit the dispute to mediation by a mediator mutually selected by the Parties. If the Parties are unable to agree upon a mediator, then the mediator will be appointed by the American Arbitration Association.  Any such mediation will take place within thirty (30) days of the date that a Party gives the other Party written notice of its desire to mediate the dispute. Notwithstanding the foregoing, either Party may, during the pendency of the mediation, proceed with litigation regarding the claim, controversy or dispute which is the subject of the mediation. If the Parties become involved in litigation or mediation arising out of or related to this Agreement in which the services of an attorney or other expert are reasonably required, the substantially prevailing Party (giving due consideration to all relevant circumstances and not merely to which Party obtains a judgment or recovery in its favor) will be fully compensated for the cost of its participation in such proceedings, including court costs, expenses and the reasonable costs incurred for attorneys' fees and experts' fees (such attorneys' and experts' fees not to exceed $150,000).

27.   **CONFLICT OF DOCUMENTS.** If there is a conflict between the provisions of this MSA and any other documents concerning the Work performed under this MSA, the order of precedence for purposes of resolution will be: (i) this MSA, (ii) the Work Order, and (iii) any other document prepared by Company and agreed to by Contractor.

28.   **SEVERABILITY.** If any provision of this Agreement is judicially determined to be inconsistent with, or

contrary to, any applicable law, rule, or regulation, or if any provision of this Agreement is found by a court of competent jurisdiction to be invalid or unenforceable, that provision will be deemed to be modified to the extent required to comply with said law, rule, or regulation, or to make it valid and enforceable, and this Agreement, as so modified, will remain in full force and effect. If said provision cannot be so modified, then it will be deemed deleted and the remainder of the Agreement will continue and remain in full force and effect.

29.     **WAIVER.** Any waiver on the part of Company or Contractor of any term or condition of this Agreement will not constitute a precedent or bind either Party to a waiver of any succeeding breach of the same or any other term or condition of this Agreement.

30.     **NOTICES.** All notices, statements or other communications required or permitted between Company and Contractor will be in writing and will be considered as having been given if delivered by mail, courier, hand delivery, electronic mail or facsimile to the other Party at the designated physical address, electronic mail or facsimile number. Date of service by mail, courier or hand delivery is the date on which such notice is received by the addressee; provided, however, if such date received is not a Business Day, then the date of service will be considered to be the next date that is a Business Day. Date of service by electronic mail or facsimile is the date sent (evidenced by the sender's electronic mail or fax machine-generated confirmation of transmission); provided, however, if an electronic mail or facsimile is sent after 5:00 p.m. local time, then the date of service will be considered to be the next date that is a Business Day. "Business Day" means any day which is not a Saturday, Sunday or legal holiday recognized by the federal government of the United States of America. Either Party may change its physical address, electronic mail, facsimile number or telephone number upon written notice to the other Party, but such change will not be effective until thirty
(30) days after receipt by the other Party.  Notices will be delivered to Company, addressed as follows:

    White Marlin Operating Company, LLC
    1415 Louisiana Street, Suite 3550
    Houston, TX 77002
    Attention: Contract Administration
    E-mail: plewandowski@talcopetro.com
    Facsimile: 713-583-3530

The address for notice to Contractor will be as set forth on the signature page.

31.     **APPLICABLE LAW/JURISDICTION AND VENUE.** This MSA and all matters arising out of or relating to this MSA, including tort and statutory claims are governed by, and construed in accordance with the General Maritime Law of the United States. In the event the General Maritime Law of the United States is held inapplicable by a court or tribunal, this MSA and all matters arising out of or relating to this MSA, including tort and statutory claims are governed by, and construed in accordance with the laws of Texas, without giving effect to any conflict of laws provisions thereof that would result in the application of the laws of a different jurisdiction. Any suit or proceeding hereunder will be brought exclusively in the United States District Court for the Southern District of Texas – Houston Division. Each Party hereby consents to the personal jurisdiction of said Court and waives any objection that such Court is an inconvenient forum.

32.     **TIMING.** Time is of material importance in the completion of any Work under the Agreement.

33.     **HEADINGS.** All headings used in this MSA are solely for the purpose of convenience and will in no manner be deemed to be a part of this MSA or used in interpreting its terms.

34.     **EXECUTION WARRANTY.** The persons signing below represents that they have all requisite power,

authority, and authorization to execute this MSA on behalf of the Parties for whom they sign, and that by signing below, this MSA will be fully binding upon and enforceable against all such Parties and their affiliates.

35.     <u>ENTIRE AGREEMENT/MODIFICATION</u>. THIS MSA, TOGETHER WITH <u>EXHIBIT A</u> ATTACHED HERETO AND INCORPORATED HEREIN, SETS FORTH THE ENTIRE AGREEMENT BETWEEN CONTRACTOR AND COMPANY WITH RESPECT TO ITS SUBJECT MATTER. ALL PRIOR NEGOTIATIONS AND DEALINGS REGARDING THE SUBJECT MATTER HEREOF ARE SUPERSEDED BY AND MERGED INTO THIS MSA AS OF THE EFFECTIVE DATE. No amendment, modification or revision of this MSA or any Work Order will be effective unless made in writing and signed by authorized representatives of both Parties who have actual authority to amend, modify or revise this MSA.

36.     <u>COUNTERPARTS.</u> This Agreement may be executed in electronic counterparts, each of which will be considered one and the same agreement and will become effective when it has been signed by each of the Parties and delivered to the other Party.

*[Signature page follows]*

**IN WITNESS WHEREOF,** the Parties have caused this MSA to be signed by their respective duly authorized representatives effective as of the date first written above.

CONTRACTOR:
COUVILLION GROUP, LLC

By: _____

Name: __Timothy Couvillion__

Title:__ Sole Manager__

## 26July21

COMPANY:
WHITE MARLIN OPERATING COMPANY, LLC

By: _Richard Watson_____

Name:_ Richard Watson_____

Title:_ VP of Operations_____

**Contractor Notification Information (As set forth in Article 30):**

Address: 371 Walker Road

_____Belle Chasse, LA 70037

Attention: Timothy Couvillion

E-mail: tcouvillion@couvilliongrp.com          Fax:  504-656-8235

Tax Identification No. 20-2983099

w/ a copy to

Couvillion Group
Attn: PO Box 344
Belle Chasse, LA  70037

**EXHIBIT A**
**TO MASTER SERVICES AGREEMENT**
**WHITE MARLIN OPERATING COMPANY, LLC**

**INSURANCE REQUIREMENTS**

1.   Procurement and Maintenance:

Each Party will separately purchase and will maintain, with insurance companies reasonably acceptable to the other Party and having an A.M. Best (or other reputable international rating service) rating of "A VIII" or better or its equivalent where unavailable, the insurance coverage set forth below with respect to and for the duration of this MSA or any applicable Work Order, at the sole expense of the Party procuring said insurance coverage.

2.   Insurance of Contractor's Subcontractors:

Each Party will require each of the Party's subcontractors to provide the insurance coverage(s) and amount(s) thereof set forth below (or substantially similar insurance coverage(s) and amount(s)) as it deems necessary. Any deficiency in the coverage(s) or amount(s) or policy limits of such subcontractors' insurance coverage will be the responsibility of the Party that hires the subcontractor.

3.   Coverage:

A.   Workers Compensation/Employers' Liability

1.   Statutory Workers' Compensation insurance in the amounts required by all applicable laws, rules or regulations of the States in which the Contractor qualifies as an employer and in which the Work is performed, including U.S. Longshore & Harbor Workers Act and Outer Continental Shelf Lands Act coverage (if applicable).

2.   Employers' Liability with limits of not less than:

Bodily Injury by Accident - $1,000,000 each accident

Bodily Injury by Disease - $1,000,000 policy limit

Bodily Injury by Disease - $1,000,000 each employee

3.   Maritime Employers' Liability including, to the extent applicable, Jones Act and Death on the High Seas Act Coverage and transportation, wages, maintenance and cure with limits of $1,000,000 each person/$1,000,000 each accident to the extent not covered under Protection & Indemnity coverage.

4.   "In Rem" endorsement **if operations are over water.**

5.   Borrowed Servant/Alternate Employer endorsement.

B.   Commercial General Liability Insurance

1.   Commercial General Liability (occurrence form) including coverage for: "Action Over" claims; premises/operations; independent contractors; blowout and cratering; explosion, collapse and underground property damage; sudden and accidental seepage and pollution; underground resources and equipment; products/completed operations; and blanket contractual liability specifically covering the obligations assumed by Contractor under this MSA or the applicable Work Order.

2.  Deletion (or modification) of watercraft exclusion as respects operations and contractual liability for watercraft exposure not covered by Protection and Indemnity policy but only **if the performance of the Work requires Contractor to furnish the use of a vessel or vessels.**

3.  "In Rem" endorsement **if operations are over water.**

4.  Minimum Limit of Liability: $1,000,000 combined single limit of liability each occurrence bodily injury or property damage.

C.  Automobile Liability Insurance

1.  Standard comprehensive form including all owned, hired and non-owned vehicles with a minimum limit of $1,000,000 combined single limit of liability each accident for bodily injury or property damage.

D.  Vessel Insurance

**If the performance of the Work requires a Party to furnish transportation through the use of a vessel or vessels,** the Party furnishing the vessel will carry or require the owner, lessee or charteree of each vessel to carry:

1.  Protection and Indemnity Insurance

   a.  Protection and Indemnity Insurance, subject to the insuring clauses of Form SP - 23, or its equivalent, including pollution liability, crew coverage, transportation, wages, maintenance and cure, Jones Act, Death on the High Seas Act Coverage (to the extent applicable), Collision Liability and Removal of Wreck and Debris, including coverage for voluntary Wreck and Debris removal.

   b.  Deletion of any policy language which limits coverage in the event that any Limitation of Liability Statute applies in respect of any Additional Insured.

   c.  Borrowed Servant endorsement.

   d.  Severability of Interest endorsement.

   e.  Minimum Limit of Liability: $5,000,000 any one accident or occurrence.

2.  Hull and Machinery Insurance

   a.  Hull and Machinery insurance written on American Institute Clauses, amended to "All Risk" with full collision liability insured to the declared value of the vessel.

   b.  Deletion of any policy language which limits coverage in the event that any Limitation of Liability Statute applies in respect of any Additional Insured.

   c.  Broad Form Removal of Wreck and Debris, including Contractual, to the extent not provided under the Protection & Indemnity coverage, subject to a minimum limit of the agreed value of the vessel or $5,000,000, whichever is greater.

3. Towers' Liability Insurance

> Towers' Liability Insurance (if the vessel will engage in towing) subject to terms of the board American Institute Towers' Liability Clause containing a minimum limit of liability of $5,000,000.

E.   Aircraft Liability Insurance

**If the performance of the Work requires a Party to furnish transportation through the useof aircraft (including helicopters),** the Party furnishing the aircraft will carry, or require the owners or lessors of suchaircraft to carry:

1. Aircraft liability insurance covering all owned (if any) hired and non-owned aircraft (fixed wing and rotary) including passenger liability.

2. Including contractual liability.

3. Minimum Limit of Liability: $5,000,000 combined single limit of liability each accident for bodily injury or property damage.

F.   Excess/Umbrella Liability Insurance

1. Providing following form coverage for Employers' Liability, Maritime Employers' Liability, Commercial General Liability, and Automobile Liability.

2. Minimum Limit of Liability: $5,000,000 combined single limit of liability each occurrence for bodily injury or property damage.

G.   Property/Equipment Insurance

Insurance covering any property or equipment furnished by a Party in the performance of the Work to be provided under this MSA or the applicable Work Order. In the alternative, the Parties may self-insure their equipment.

4.   Waiver of Subrogation

Contractor will cause its insurers to waive rights of subrogation in favor of each member of Company Group with such endorsement to be reflected on all policies of insurance required to be carried by Contractor in this Agreement, but only as respects and to the extent of the express indemnity obligations assumed by Contractor under this MSA.

Company will cause its insurers to waive rights of subrogation in favor of each member of Contractor Group with such endorsement to be reflected on all policies of insurance required to be carried by Company in this Agreement, but only as respects and to the extent of the express indemnity obligations assumed by Company under this MSA.

5.   Additional Insured

All of Contractor's policies of insurance required to be carried by Contractor hereunder, except Workers Compensation, Employers' Liability and Maritime Employers' Liability, will be endorsed to list each member of Company Group as an Additional Insured, but only as respects and to the extent of the express release, defense, and indemnity obligations and liabilities assumed by Contractor under this MSA.

All of Company's policies of insurance required to be carried by Company hereunder, except Workers Compensation, Employers' Liability and Maritime Employers' Liability, will be endorsed to list each member of Contractor Group as an Additional Insured, but only as respects and to the extent of the

express release, defense, and indemnity obligations and liabilities assumed by Company under this MSA.

6.   Primary Insurance

All of Contractor's policies of insurance required to be carried by Contractor hereunder, except Workers Compensation, Employers' Liability and Maritime Employers' Liability (if applicable), will be endorsed to provide that all such policies of insurance are primary to, and non-contributing with, any other insurance maintained by any member of the Company Group, to the extent of the express release, defense, and indemnity obligations and liabilities assumed by Contractor under this MSA.

All of Company's policies of insurance required to be carried by Company hereunder, except Workers Compensation, Employers' Liability and Maritime Employers' Liability (if applicable), will be endorsed to provide that all such policies of insurance are primary to, and non-contributing with, any other insurance maintained by any member of the Contractor Group, to the extent of the express release, defense, and indemnity obligations and liabilities assumed by Company under this MSA.

7.   Territory

All policies of insurance required to be carried by the Parties hereunder will be endorsed to provide adequate territorial and navigational limits to cover the areas of operation.

8.   Certificates of Insurance

Prior to commencement of the Work, Contractor and Contractor's subcontractors, if any, will deliver to Company certificates of insurance certifying the existence and limits of the insurance coverage, noting applicable endorsements, described above and will deliver same and renewals thereof to Company at the address set forth in this MSA.   In the event Contractor receives notice from its insurer of its intent to cancel any of the insurance required hereunder, Contractor shall provide such notice as soon as reasonably practicable and provide Company with a replacement certificate of insurance prior to the effective date of cancellation. Certificates of Insurance should be sent to:

> White Marlin Operating Company, LLC
> Attention: Contract Administration
> 1415 Louisiana Street, Suite 3550
> Houston, TX  77002
> Phone:  713-358-2020
> Fax:      713-583-3530
> E-mail:  plewandowski@talcopetro.com

9.   No Recourse of Premium

All policies of insurance required to be carried by Contractor  hereunder  will be endorsed to delete any recourse of premium, club calls, assessments or advances against any member of Company Group.

All policies of insurance required to be carried by Company hereunder will be endorsed to delete any recourse of premium, club calls, assessments or advances against any member of Contractor Group.

10.   Deductibles

Except as otherwise provided in this MSA or the applicable Work Order, deductibles will be for the account of the Party procuring the subject insurance policy.

MSA: FEBRUARY 2020                                            19

11. <u>Miscellaneous</u>

    A. Upon request, Company may examine certified copies of any or all of Contractor's insurance policies required to be carried by Contractor hereunder at Contractor's corporate headquarters in Tulsa, Oklahoma.