# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

COUVILLION GROUP, LLC.,

                *Plaintiff,*

    v.

WHITE MARLIN OPERATING
COMPANY LLC; AGUA
TRANQUILLO MIDSTREAM
LLC; TALCO PETROLEUM
LLC; TORRENT OIL, LLC;
& NIGEL SOLIDA,

                *Defendants.*

Civil Action No. 4:22:cv-00908

## DEFENDANTS' AMENDED PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDINGS ...................................... 3

II.    ISSUES TO BE RULED UPON .................................................................. 6

III.   APPLICABLE LAW ................................................................................. 6

IV.   SUMMARY OF ARGUMENT ..................................................................... 7

V.    BACKGROUND ..................................................................................... 8

VI.   DISCUSSION ...................................................................................... 10

      A.    Agua and Talco are not parties to any contract with
             Couvillion ................................................................................. 11

      B.    Couvillion's breach of oral contract claim fails as a matter of
             law and by the express terms of the MSA ........................................ 11

      C.    Couvillion has not stated a viable "Suit on Sworn Account"
             claim against Agua or Talco .......................................................... 13

      D.    Couvillion's common law fraud and negligent
             misrepresentation claims do not comply with Rule 9 ..................... 15

      E.    Couvillion's claim for quantum meruit is not viable ...................... 18

      F.    "Interest owed" is not a cause of action ........................................ 19

VII.   CONCLUSION .................................................................................. 20

Defendants White Marlin Operating Company, LLC ("White Marlin"); Agua Tranquillo Midstream LLC ("Agua"); and Talco Petroleum, LLC ("Talco") file this Amended Partial Motion to Dismiss Plaintiff Couvillion Group, LLC's ("Couvillion") Second Amended Petition under Rules 9 and 12 of the Federal Rules of Civil Procedure.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

This case began as a straightforward contractual dispute between Couvillion and White Marlin about the scope of White Marlin's obligations to Couvillion under a two-party written contract. Consistent with this history, Couvillion originally sued White Marlin (and *only* White Marlin) for failing to pay Couvillion for certain pipe removal work Couvillion claims to have performed for White Marlin in the Corpus Christi Bay.[1]

Within weeks of filing this lawsuit, Couvillion amended its complaint, expanding the suit to include Agua and Talco (neither of which are named in, nor signatories to, any contract with Couvillion) for breach of a written contract, breach of an oral contract, suit on sworn account, common law fraud, quantum merit, equitable estoppel/detrimental reliance, and "interest owed."[2]

---

[1]     *See* Plaintiff's Original Complaint (ECF 1).

[2]     *See* Plaintiff's First Amended Complaint (ECF 11).

On June 7, 2022, White Marlin, Agua, and Talco requested a pre-motion conference on a potential Motion to Dismiss under Rules 9 and 12 of the Federal Rules of Civil Procedure.[3] In so doing, Defendants identified substantive deficiencies with *all* of Couvillion's claims against Aqua and Talco, and the claims against White Marlin except for the Breach of Contract and Suit on Sworn Account.[4]

On June 10, 2022, the Court presided over a pre-motion conference related to the issues outlined in Defendants' letter.[5] During that hearing, counsel for Couvillion "requested time to amend Couvillion's Complaint prior to Defendants filing a Motion to Dismiss."[6] The Court granted Couvillion's request for leave to amend, and subsequently amended the scheduling order to grant Couvillion even more time to file its Second Amended Complaint.[7]

On August 22, 2022, Couvillion filed its Second Amended Complaint.[8] Rather than address the deficiencies raised in Defendants' pre-motion letter, Couvillion added new claims against Aqua, White Marlin, and Talco and

---

[3]   *See* Defendants' Letter (ECF 15).

[4]   *Id.*

[5]   *See* Notice of Setting (ECF 17).

[6]   Couvillion's Unopposed Motion for Extension of Time (ECF 18).

[7]   *Id.*; Order Granting Unopposed Motion for Extension of Time (ECF 20).

[8]   *See* Plaintiff's Second Amended Complaint (ECF 24).

doubled down on the same claims it requested the opportunity to amend.[9] Couvillion also added two new defendants, Nigel Solida, and Torrent. In response, Defendants partially moved to dismiss Couvillion's Second Amended Complaint.[10] Shortly thereafter, the parties jointly moved for—and the Court granted—a stay of the briefing schedule and consideration of Defendants' Second Amended Motion to Dismiss to allow the parties time to attempt to resolve the claims in this case.[11]

By agreement of the parties, this Court denied Defendants' Motion to Dismiss Couvillion's Second Amended Complaint as moot.[12] Couvillion subsequently non-suited its claims against Defendants Torrent and Solida.[13] Thus, as it stands, Couvillion purports to state claims for (1) breach of oral contract; (2) suit on sworn account; (3) fraud; (4) negligent misrepresentation; (5) unjust enrichment; and (6) interest owed.

Given the above, Defendants now bring this amended motion to dismiss Couvillion's Second Amended Complaint.

---

[9]   *See id.*

[10]   ECF 25.

[11]   ECF 26 and 27.

[12]   ECF 32.

[13]   ECF 34.

## II.    ISSUES TO BE RULED UPON

Whether Couvillion has stated any claim against any Defendant other than White Marlin, and whether Couvillion has stated a claim other than Breach of Contract and Suit on Sworn Account against White Marlin.

## III.    APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). In deciding a Rule 12(b)(6) motion, the Court should "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). The Court "do[es] not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up).

Additionally, when—as here—plaintiff's claims are grounded in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b):

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). This heightened pleading standard applies to the alter ego, fraud, and negligent misrepresentation claims Couvillion asserts here.

Rule 9(b)'s particularity requirement generally demands the complaint identify the "who, what, when, where, and how" of the allegedly fraudulent content. *See United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). Rule 9(b) sets a "high bar." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020). "Naked assertions devoid of further factual enhancement will not suffice." *Sharifan v. NeoGenis Labs, Inc.*, No. 4:21-CV-01940, 2022 WL 3567010, at *5 (S.D. Tex. Aug. 18, 2022) (citing *In re Lindsey*, 733 F. App'x at 192.).

## IV.     SUMMARY OF ARGUMENT

In its lawsuit, Couvillion seeks to recover money it claims to be owed for work it performed under a written contract with White Marlin.[14] During the pre-motion hearing, Couvillion requested and received leave to amend its First Amended Complaint to address potential issues in its pleading identified by

---

[14] *Id.* at Exs. A&B.

Defendants. Couvillion's amendments do not address any of the fatal remedies described in Defendants' pre-motion letter. Instead, Couvillion simply added a duplicative negligent misrepresentation claim. Couvillion's new claim fails for similar reasons as raised in Defendant's pre-motion letter.

Try as it might to make this a multiparty fraud case, this remains a dispute between two parties over alleged non-payment under a written contract. The remainder of Couvillion's claims—for fraud, negligent misrepresentation, suit on sworn account, and quantum meruit—are all either legally barred or insufficiently plead. The Court should thus dismiss these claims and return this case to what it has been from the start: a contractual dispute between White Marlin and Couvillion.

## V.    BACKGROUND

In 2021, White Marlin retained Couvillion to assist with the removal of certain pipelines owned by Agua located in Corpus Christi Bay, Texas.[15] In so doing, Couvillion alleges White Marlin and Couvillion executed two written contracts. In the first—called the Day Rate Proposal—Couvillion provided general estimates for the costs of "mobilizing personnel and equipment; rig up and pull[ing] barge and pulling unit; sett[ing] up Mary Jane; provid[ing] pipeline

---

[15]    Plaintiff's Second Amended Complaint (ECF 24) at Paragraph IX.

removal, digs, and install as needed, [and] demob[ing] Couvillion equipment."[16] Couvillion alleges White Marlin's representative—Richard Watson—signed the Day Rate Proposal "granting Notice to Proceed."[17]

Couvillion alleges Couvillion and White Marlin subsequently executed a Master Services Agreement ("the MSA"). The MSA did not, by itself, obligate White Marlin or Couvillion to do anything.[18] Instead, the MSA provides the terms that apply if Couvillion agreed to undertake work at White Marlin's request.[19] Among other things, the MSA specifically provided that Couvillion would "receive the compensation specified in the Work Order which is agreed to by [White Marlin] and [Couvillion] at the time the Work Order is accepted by [White Marlin]."[20] Couvillion claims it performed such work, and also alleges White Marlin did not pay it for this work as required by the MSA.[21]

White Marlin disputes that it breached the MSA (or any other contract), but Couvillion's breach of written contract claim against White Marlin is viable. But Couvillion goes further, and tries to also hold Agua and Talco, liable

---

[16]   *Id.* at p. 2.

[17]   *Id.*

[18]   *Id.*, Ex. B at Section 1.

[19]   *Id.*

[20]   *Id.*, Ex. B at Paragraph 2.1.

[21]   *Id.* at Paragraph XX.

for the work Couvillion performed for White Marlin under a variety of extra-contractual theories even though it concedes that none of these entities executed the MSA or any other written agreement with Couvillion. Indeed, Couvillion acknowledges that other entities were intentionally excluded from the final agreement.[22]

## VI.   DISCUSSION

On June 10, 2022, the Court presided over a pre-motion conference on Defendants' pre-motion letter in which Defendants outlined the various reasons the Court should dismiss all of Couvillion's claims other than its breach of written contract claim and suit on written account claim against White Marlin.[23] During this hearing, Couvillion requested and received leave to amend its First Amended Complaint. Rather than use this opportunity to address the issues outlined in Defendants' pre-motion letter, Couvillion added *new* claims and *new* parties.[24] As set out in detail below, the Court should dismiss all Couvillion's claims against all of the non-White Marlin Defendants in their entirety. Moreover, the Court should dismiss all claims against White Marlin except for Breach of Contract and Suit on Sworn Account.

---

[22]   Second Amended Complaint (ECF 24) at Paragraph XIII ("An earlier version of this MSA was drafted with, among others, Agua as one of the parties.")

[23]   *See* ECF 15 and ECF 17.

[24]   *See* ECF 24.

**A.     Agua and Talco are not parties to any contract with Couvillion.**

In its Second Amended Complaint, Couvillion asserts a claim against White Marlin for breach of a written contract. While this claim is viable, Couvillion does not make clear whether it is also trying to assert claims for breach of written contract against Agua or Talco. To the extent Couvillion claims to do so, those claims should be dismissed because Couvillion has failed to allege that any of these entities was a party to any written contract. *American General Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir. 2010).

**B.     Couvillion's breach of oral contract claim fails as a matter of law and by the express terms of the MSA.**

In addition to asserting a breach of contract claim, Couvillion seeks to hold White Marlin, Agua, and Talco liable by alleging that White Marlin, Agua, and Talco breached an oral agreement "whereby Mr. Watson directed Couvillion to perform its services on behalf of White Marlin, Agua, Torrent and Talco" by "failing to pay for Couvillion's services." Such an allegation is insufficient on its face to state a claim for breach of an oral contract because "Couvillion has not alleged offer, acceptance, consideration, material terms, consent, duration, or even the beginning date of [this] alleged oral agreement." *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 696 (S.D. Tex. 2020) (dismissing similarly pleaded breach of oral contract claim for failure to specifically allege offer, acceptance, and consideration); *see also Bodine v. First Co.*, No. 3:20-CV-3116-BT, 2021 WL 5505562,

at *7 (N.D. Tex. Nov. 24, 2021) (dismissing breach of oral contract claim because complaint did not "identif[y] any terms of the supposed contract, they have failed to identify the specific provision that was breached and have not issued a statement of the contract's substance.").

Putting that fatal pleading flaw aside, this "oral agreement" claim also fails as a matter of law because the MSA—which Couvillion relies on for its contractual claim—contains not only a merger clause which bars these very types of "oral" claims, but a specific provision that "[n]o parol agreement of whatever nature . . . will ever be deemed to alter or effect" the MSA.[25] *See e.g., Murex, LLC v. GRC Fuels, Inc.*, No. 3:15-CV-3789-B, 2016 WL 4207994, at *12 (N.D. Tex. Aug. 10, 2016) (dismissing breach of oral contract claim because written contract contained merger clause).

Because Couvillion fails to properly plead a claim based on an "oral contract" and any such claim would fail as a matter of law, the claim should be dismissed as to all Defendants.

---

[25]     *Id.* at Ex. B, Paragraph 35 and 1.3.

### C. Couvillion has not stated a viable "Suit on Sworn Account" claim against Agua or Talco.

Couvillion next attempts to assert a claim for "suit on sworn account" against all Defendants, including Nigel Solida, for "services rendered pursuant to the written or oral contracts described above."[26] While Couvillion's claim is viable with respect to White Marlin, Couvillion fails to state a claim for suit on sworn account with respect to any of the remaining defendants. To state a claim for a suit on sworn account, Couvillion must allege (1) a sale and delivery of the goods or services; (2) that the amount of the account is just, that is, that the prices are charged in accordance with an agreement or in the absence of an agreement, they are the usual customary and reasonable prices for those goods or services; and (3) that the amount is unpaid. *SM Energy Co. v. Smackco, Ltd.*, No. 11–CV–3028, 2012 WL 4760841, at *5 (S.D. Tex. Oct. 5, 2012).

The viability of Couvillion's suit on sworn account claim against Agua and Talco turns on the first element. In evaluating this element, courts have repeatedly recognized that a party cannot maintain a "suit on sworn account" against a "stranger to the transaction." *Cinco J., Inc. v. Pressure Trucks, Inc.*, No. SA-15-CV-214-XR, 2015 WL 1957108, at *6 (W.D. Tex. Apr. 29, 2015. Although this is traditionally a fact-based inquiry, Couvillion "still must allege with particularity"

---

[26]   *Id.* at Paragraph XXXIV.

that it actually delivered goods or services to Agua and Talco to state a claim against them. *Id.* Indeed, even if Couvillion were to assert that the other Defendants were somehow responsible for payment, it would not be enough to sustain the claim. *Id.* (dismissing suit on sworn account claim because "Johnson only alleges Thone 'guaranteed [Pressure's] payment of all sums due to [Johnson] as evidence by the Personal Guarantee' attached to the petition").

Here, Couvillion does not allege it actually delivered goods and services to any Defendant other than White Marlin. Instead, Couvillion bases all of its claims on invoices addressed to White Marlin, for work that was done for White Marlin, under a contract with White Marlin.[27] Couvillion attaches no invoices that it submitted to any Defendant other than White Marlin, and does not allege it ever submitted these invoices to any of these Defendants for payment.[28] At best, Couvillion vaguely suggests that the non-White Marlin Defendants *benefitted* from the services provided to White Marlin and/or guaranteed White Marlin's obligations under the written contract and/or invoices.[29] This is not enough, and the Court should dismiss White Marlin's suit on sworn account claim against these entities. *Cinco*, 2015 WL 1957108, at *7 (W.D. Tex. Apr. 29, 2015).

---

[27] Second Amended Complaint (ECF 24) at Paragraphs XVIII-XIX; *Id.* at Ex. 3.

[28] *Id.* at Ex. 3.

[29] *Id.* at Paragraph XXI.

### D. Couvillion's common law fraud and negligent misrepresentation claims do not comply with Rule 9.

Couvillion also tries to assert common law fraud and negligent misrepresentation claims against all Defendants. In these claims, Couvillion alleges that "Richard Watson and White Marlin/Agua/Talco/Torrent's representatives" either intentionally or negligently induced them into contracting with White Marlin when they knew or should have known that White Marlin could not and/or would not pay for any services Couvillion provided.[30]

Since Couvillion bases its fraud and negligent misrepresentation claims on the same alleged "misrepresentations," both claims must satisfy Rule 9(b). *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003). As a result, the outcome of these claims "turn[] on Rule 9(b)'s *what, when, how*, and—to a lesser extent—*where* elements." *Sharifan v. NeoGenis Labs, Inc.*, No. 4:21-CV-01940, 2022 WL 3567010, at *5 (S.D. Tex. Aug. 18, 2022) (Edison, J.).

Couvillion's allegations fail this test for multiple reasons. For one thing, Couvillion does not identify "who" made the representations it claims gave rise to its claims. Instead, it attributes these supposed misrepresentations to "Defendants, themselves or through their representatives." Elsewhere, Couvillion attributes the supposed misrepresentations to "Richard Watson and White

---

[30]      *Id.*

Marlin/Agua/Talco/Torrent's representatives."[31] Richard Watson is a person, but this allegation makes it impossible to figure out which supposed misrepresentations Couvillion attributes to him, and which it attributes to unidentified "representatives" of "White Marlin/Agua/Talco/Torrent."

Along the same lines, Couvillion does not even bother to say "when" these unidentified persons(s) made their supposed misrepresentations, nor does Couvillion describe "what" these mystery people said that caused Couvillion to contract with White Marlin. Instead, Couvillion claims "Richard Watson and White Marlin/Agua/Talco/Torrent's representatives" induced them into entering the Contract by "misrepresenting the site conditions," "advising Couvillion that it would be paid in full for its work" and "advising Couvillion that it would be paid in full with the knowledge that Defendants would not have the funds necessary to fully compensate Couvillion for its work."[32] As this Court has recognized, such defects are fatal. *Sharifan v. NeoGenis Labs, Inc.*, No. 4:21-CV-01940, 2022 WL 3567010, at *6 (S.D. Tex. Aug. 18, 2022) (dismissing fraud claim because it "fails to provide even the most minimal context so that HumanN can identify the advertisement(s) at issue and prepare its defense accordingly."); *see also P. Small Corp.*, 505 F. Supp. 3d at 681 (dismissing fraud claims).

---

[31]     *Id.*

[32]     *Id.* at Paragraph XXI.

Moreover, Couvillion's claims would fail *even if it did set out the details of the transaction.* First, Couvillion cannot claim it was fraudulently induced into contracting with White Marlin because it disclaimed reliance on any pre-contract statements when it executed the MSA.[33] Since reliance is an essential element of Couvillion's fraud and negligent misrepresentation claims, these claims necessarily fail. *Sharifan*, 2022 WL 3567010, at *6 (Edison) (dismissing fraud claim because (among other reasons) plaintiff did not allege actual reliance). Couvillion also expressly waived its right to bring a fraud and/or negligent misrepresentation claim in the Day Rate Proposal. [34]

Finally, Couvillion's fraud and negligent misrepresentation claims are barred by the economic loss rule. The economic loss rule provides that a plaintiff cannot bring a fraud or negligent misrepresentation claim "unless the plaintiff can establish that he suffered an injury that is *distinct*, *separate*, and *independent* from the economic losses recoverable under a breach of contract claim." *Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 668

---

[33]     Plaintiff's Second Amended Complaint, Ex. B at Paragraph 35 ("This MSA . . . sets forth the entire agreement between contractor and company with respect to its subject matter. All prior negotiations and dealings regarding the subject hereof of superseded and merged into this MSA as of the effective date."

[34]     *Id.*, Ex. A at Paragraph 17 ("Notwithstanding anything in this agreement to the contrary, neither party shall be liable to the other for any incidental, special, consequential or other indirect damages, including any damages for lost revenue or profit, lost production, cost of delays or pollution cleanup, or punitive or exemplary damages, whether or not the parties were aware of the possibility of their occurrence, and whether based on tort (Including Negligence), breach of contract, breach of warranty, strict liability or otherwise.").

(S.D. Tex. 2021) (emphasis original); *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 573 (S.D. Tex. 2012).

To determine whether the economic loss rule applies, courts examine "source of the duty and the nature of the remedy." *Kiper*, 884 F. Supp. 2d at 573. Couvillion looks to recover the amount it claims to be owed for work it purports to have done under a written contract. Thus, Couvillion's fraud and negligent misrepresentation claims "derive from the default and enforcement of the indebtedness at issue" and Couvillion's "alleged tort damages are economic and arise from claims dependent upon the existence of a contract." *Id.* As a result, Couvillion's fraud and negligent misrepresentation claims are barred by the economic loss rule and must be dismissed. *Id.* (dismissing fraud claim); *Advon Corp.*, 517 F. Supp. 3d at 668 (dismissing negligent misrepresentation claim).

### E. Couvillion's claim for quantum meruit is not viable.

Couvillion does not appropriately plead a viable claim for quantum meruit. In Texas, recovery under quantum meruit is "based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 462 (5th Cir. 2003). As noted previously, Couvillion does not allege it rendered *any* services to any entity or person other than White Marlin, and it also has provided no allegations that any entity other than White Marlin knowingly accepted these

benefits. These omissions are fatal with regard to all Defendants other than White Marlin. *ACS Primary Care Physicians Sw., P.A. v. United Healthcare Ins. Co.*, No. 4:20-CV-1282, 2020 WL 4932152 (S.D. Tex. Aug. 17, 2020).

Couvillion's claim also fails against White Marlin. "As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials." *Sys. One Holdings LLC v. Campbell*, No. B: 18-CV-54, 2018 WL 4290459, at *4 (S.D. Tex. Aug. 21, 2018). Here, Couvillion alleges that Couvillion and White Marlin are parties to such a contract, thus Couvillion cannot move forward with its quantum meruit claim against White Marlin. *Id.*

**F.    "Interest owed" is not a cause of action.**

Finally, the Court should dismiss Plaintiff's claim for "interest owed." Plaintiff expressly bases this claim on the so-called Day Rate Proposal which it claims is part of the written contract.[35] Given this reality, this "cause of action" is not a cause of action at all, but a subset of the damages Plaintiff seeks to recover under a written contract.

---

[35]    Plaintiff's Second Amended Complaint (ECF 24) at Paragraph L.

## VII.   CONCLUSION

Couvillion and White Marlin signed two contracts for services: a Day Rate Proposal and an MSA. There were no other parties to either contract. Indeed, Couvillion admits that other parties were expressly removed from earlier drafts of the MSA. In filing its Second Amended Petition, Couvillion chose to ignore this history as well as the relevant case law when it brought multiple claims against multiple Defendants. For reasons set out above, the Court should dismiss *all* of Couvillion's claims against Agua Tranquillo and Talco, and dismiss all claims against White Marlin other than Breach of Contract and Suit on Sworn Account, with prejudice.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: _____*Jeb Golinkin*_____
    Joseph W. ("Jeb") Golinkin II
    State Bar No. 24087596
    Federal ID No. 2515657
    Michael Cancienne
    State Bar No. 24055256
    1980 Post Oak Blvd., Suite 2300
    Houston, Texas 77056
    Telephone: 713.955.4025
    mcancienne@jlcfirm.com
    jgolinkin@jlcfirm.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATES OF SERVICE

I certify that on April 24, 2023, I served this Motion on all counsel of record via CMECF, which will send notification of this filing to all counsel of record in this case.

/s/ Jeb Golinkin
Joseph W. Golinkin II

## CERTIFICATE OF CONFERNECE

I certify that on June 7, 2022, I conferred with counsel for co-defendants regarding the deficiencies in their Complaint. During the subsequent conference, the Court expressly granted us permission to file this motion.

/s/ Jeb Golinkin
Joseph W. Golinkin II