IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| COUVILLION GROUP, LLC.,<br><br>*Plaintiff,*<br><br>v.<br><br>WHITE MARLIN OPERATING COMPANY LLC; AGUA TRANQUILLO MIDSTREAM LLC; TALCO PETROLEUM LLC; TORRENT OIL, LLC; & NIGEL SOLIDA,<br><br>*Defendants.* | Civil Action No. 4:22:cv-00908 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

In their Motion to Dismiss, Defendants White Marlin Operating Company LLC ("White Marlin"), Agua Tranquillo Midstream LLC ("Agua"), and Talco Petroleum LLC ("Talco") (together, "Defendants") argued that most of Couvillion's claims against White Marlin and all of its claims against Agua and Talco should be dismissed because they are either insufficiently plead or legally barred.[1] As detailed below, Couvillion's Response—particularly its weak attempts to repackage its boilerplate allegations—underscores why the Court should grant Defendants' Motion in its entirety.

### A. Agua and Talco cannot be liable for breaching a contract they did not execute.

In Count One of its Second Amended Complaint ("SAC"), Couvillion alleges White Marlin—and only White Marlin—caused it $2,100,667.11 in damages by breaching the Contracts.[2] Given the text of Couvillion's allegations, Defendants presumed that Couvillion was not purporting to hold Agua or Talco liable for breaching the Contracts. But the SAC also did not say it was *not* trying to hold either of these entities liable, so—in an abundance of caution—Agua and Talco asked the Court to dismiss this "claim" against Agua and Talco.

---

[1] ECF 37.

[2] ECF 24 at Paragraph XXX.

This proved a wise choice. In its Response, Couvillion states that the SAC *does* seek to hold both Agua and Talco responsible for breaching the Contracts. According to Couvillion, it can recover from Agua and Talco for breaching the Contracts it admits these entities did not execute because "the language of the MSA defines 'Company' as White Marlin Operating Company, LLC and its 'parent or affiliated entity that issued the Work Order.'"[3] Based on this, Couvillion argues that "as White Marlin's parent company, Talco, and affiliated entity, Agua, are both entities included in the definition of 'Company'"[4] and are therefore "parties" to the Contracts.[5]

The Court should reject Couvillion's attempt to sue Agua and Talco for breaching the Contracts for three reasons. First, the attachments to the SAC establish that neither Agua nor Talco executed either of the Contracts, nor does Couvillion allege or even argue that either of these entities consented to be bound by the Contracts or received any consideration. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) ("If such an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.").

---

[3] ECF 38 at 7.

[4] *Id.* at 7-8.

[5] *Id.*

Next, even if Agua or Talco could become "parties" to the Contracts without executing or agreeing to the Contracts, the Contracts' definition of "Company" does not actually apply to Agua or Talco. The Master Services Agreement defines "Company" as "the Company, parent, or affiliated entity *that issued the Work Order*."[6] The SAC does not allege that either Agua or Talco issued any work order, and the invoices attached to the SAC all identify White Marlin as the "Client."[7] Therefore, neither Agua nor Talco even falls under the Master Service Agreement's definition of "Company."

Finally, the Court must dismiss Couvillion's supposed breach of written contract claim against both Agua and Talco because the SAC does not actually allege either of these entities breached the Contracts. Instead, the SAC explicitly and exclusively directs its breach of written contract allegations at White Marlin.[8] A breach of contract claim necessarily involves allegations of breach. Here, the SAC lacks that critical allegation and should be dismissed.

---

6      ECF 24 at Ex. B, Paragraph 1.1.

7      *Id.* at Ex. C

8      ECF 24 at Paragraphs XXIII-XXX.

### B. Couvillion has not stated a claim for breach of oral contract.

With regard to its breach of oral contract claim, Couvillion essentially admits that its allegations are vague, but argues that the law does not require it to plead "all of the terms of an oral contract . . . at this preliminary stage"[9] and that dismissal would be inappropriate since Agua and Talco's oral representations "will be the subject of targeted discovery."[10]

It is hard to understand why Couvillion would need "targeted discovery" to describe the terms of the oral contract it purports to have agreed to and performed under. That said, Defendants do not argue that Couvillion's breach of oral contract claim fails because the SAC does not describe *all* of the oral contracts terms. Instead, Defendants observed that federal courts within the Fifth Circuit have consistently held that a party cannot state a breach of oral contract claim without describing the contract's *material* terms.[11]

Couvillion insists it satisfied this requirement by alleging that "Watson (as representative of Agua and Talco) requested Couvillion perform certain maritime services . . . to receive compensation for its hard work."[12] In

---

[9]     ECF 38 at 9.

[10]     *Id.*

[11]     ECF 37 at 11.

[12]     ECF 38 at 8.

reality, the SAC does not contain the phrase "certain maritime services," nor does it describe what services were the subject of this alleged oral contract. Couvillion nevertheless argues that the Fifth Circuit's unpublished decision in *In re. Tasch* establishes that its allegations are enough to state a claim for breach of oral contract.[13] But *Tasch* does not help Couvillion because the decision does not reference or otherwise discuss the content of the plaintiff's pleadings, nor does it consider or analyze the detail required to *state a claim* for breach of oral contract. *In re Tasch, Inc.*, 46 F. App'x 731 (5th Cir. 2002). Instead, the opinion addressed whether the plaintiff presented sufficient evidence to support a jury's determination that the defendant had breached an oral contract. *Id.*

Couvillion also tries to persuade the Court that *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth* establishes that the SAC states a claim for breach of oral contract.[14] But as Couvillion tacitly admits, the complaint discussed in *Kougl's* provided a detailed overview of the subject matter and terms of the supposed oral promise. *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth*, No. CIV.A.3:04CV2518-D, 2005 WL 1421446, at *1 (N.D. Tex. June 1, 2005) (denying defendant's motion to dismiss breach of oral contract claim because the complaint alleged "Defendants

---

13     *Id.* at 10.

14     *Id.* at 13.

agreed to compensate Plaintiff Kougl for his sales" consistent with the written terms of the defendant's written "General Terms and Conditions Compensation Plan"). The SAC does not provide a comparable level of detail, which is why the Court should dismiss Couvillion's breach of oral contract claim.[15]

---

[15] *See, e.g.*, *Sharifan v. NeoGenis Labs, Inc.*, No. 4:21-CV-01940, 2022 WL 3567010, at *5 (S.D. Tex. Aug. 18, 2022) (dismissing breach of oral contract claim for failure to adequately describe material terms); *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 696 (S.D. Tex. 2020) (dismissing similarly pleaded breach of oral contract claim for failure to specifically allege offer, acceptance, and consideration); *see also Bodine v. First Co.*, No. 3:20-CV-3116-BT, 2021 WL 5505562, at *7 (N.D. Tex. Nov. 24, 2021) (dismissing breach of oral contract claim because complaint did not "identif[y] any terms of the supposed contract, they have failed to identify the specific provision that was breached and have not issued a statement of the contract's substance."); *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 697 (S.D. Tex. 2020) (dismissing breach of oral contract claim for lack of specificity); *Casares v. Agri-Placements Int'l, Inc.*, 12 F. Supp. 3d 956, 978 (S.D. Tex. 2014) (dismissing breach of oral contract claim because "this paragraph amounts to no more than a '[t]hreadbare recital[ ] of [this] element[ ] of [Plaintiffs'] cause of action, supported by [a] mere conclusory statement[ ],' it does not suffice to survive a Rule 12(b)(6) motion.); *Provision Grp., Inc. v. Crown Toxicology, Ltd.*, No. 5:16-CV-1291-DAE, 2017 WL 11221433, at *4 (W.D. Tex. Oct. 19, 2017) (dismissing breach of oral contract claim because "the material terms of the alleged oral contract, as pled in the complaint, are overly broad, cursorily explained in one sentence, and insufficiently definite, which does not allow the Court to understand the parties' obligations."); *Roland v. Flagstar Bank, FSB*, No. 1:13-CV-588, 2014 WL 94356, at *9 (E.D. Tex. Jan. 9, 2014) (dismissing breach of oral contract claim because "[t]here are no non-conclusory facts stated which would allow the court to determine that an oral agreement was formed, much less what its material terms may be."); *Livingston v. Agric. Workers Mut. Auto Ins. Co.*, No. 4:14-CV-624-A, 2014 WL 6850972, at *3 (N.D. Tex. Dec. 4, 2014) ("Plaintiff's conclusory allegation that his 'status as an at-will employee was modified when [he] was offered and accepted an oral contract to be promoted to senior vice-president upon Hencke's retirement, does not satisfy plaintiff's obligation to plead facts from which the inference reasonably can be drawn that plaintiff has factual bases for a breach of oral contract claim."); *Lehman Bros. Holdings v. Cornerstone Mortg. Co.*, No. CIV.A. H-09-0672, 2009 WL 2900740, at *5 (S.D. Tex. Aug. 31, 2009) (Rosenthal) (dismissing breach of contract claim where plaintiff alleged "Plaintiff breached the contract by failing to properly service the loans and to give required notice"; and "... breach of contract by Plaintiff in not providing required notice to Defendant of the allegations contained in this lawsuit, of failing to properly service the loans, and in delaying any notification of any problems with any loans sold to Plaintiff by Defendant.").

### C. Couvillion has not stated a viable "Suit on Sworn Account" claim against Agua or Talco.

Couvillion attempts to save its "suit on sworn account" claim against Agua and Talco by arguing that "Section XXXV of Couvillion's SAC states 'Couvillion furnished services to Defendants[,]'" and "the definition of Defendants includes Agua and Talco."[16] There are two major problems with Couvillion's argument. First, "a complaint does not suffice if it 'offers labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Couvillion's claim fails because it did not identify or describe the services it purportedly furnished to Agua or Talco.

Similarly, the Court should dismiss Couvillion's "suit on sworn account" claim against Agua and Talco because the Invoices and "Daily Offshore Field Reports" attached to the SAC negate Couvillion's allegation that it furnished services to either Agua or Talco. "If an exhibit attached to the complaint contradicts an allegation in the complaint the exhibit controls." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 518 (S.D. Tex. 2011); *see also Dave v. O'Carroll*, No. 22-40653, 2023 WL 2983567, at *2 (5th Cir. Apr. 18, 2023).

---

16      *Id.* at 15.

Here, Exhibit C to the SAC proves Couvillion provided these services to White Marlin (which is identified as the "Client" on every single "Daily Work Report" attached to the SAC), and not to Agua or Talco.[17] This is fatal to Couvillion's suit on sworn account claims against Agua and Talco. *Wells Fargo Bank Nat'l Ass'n as Tr. for Option One Mortg. Loan Tr. 2007-FXD2, Asset-Backed Certificates, Series 2007-FXD2 v. Platt*, No. 3:17-CV-02106-N (BT), 2019 WL 7562395, at *4 (N.D. Tex. Dec. 2, 2019), *report and recommendation adopted,* No. 3:17-CV-02106-N (BT), 2020 WL 128419 (N.D. Tex. Jan. 10, 2020); *Miller v. SS Hosp. Grp., LLC*, No. 4:17-CV-00847-O, 2018 WL 3054691, at *5 (N.D. Tex. June 5, 2018), *report and recommendation adopted,* No. 4:17-CV-00847-O, 2018 WL 3046260 (N.D. Tex. June 20, 2018).

### D. The SAC does not state a claim for fraud or negligent misrepresentation.

Couvillion argues its fraud and negligent misrepresentation allegations satisfy Rule 9 because the SAC "alleged that Richard Watson ('identity'), along with other representatives of Defendants, misrepresented the conditions of the work site ('contents') during the bid process ('time') while the parties were working in Corpus Christi ('place')."[18]

---

[17] ECF 24 at Ex. C.

[18] ECF 38 at 16.

9

Characteristically, Couvillion's rhetoric ignores the fact that it is suing three separate defendants for fraud and negligent misrepresentation. For that reason, it is vital that the SAC tell the reader which of these entities Watson was supposedly representing when he made his supposedly fraudulent statements. Not only does the SAC not do this, it actually does the opposite by attributing the supposedly fraudulent/negligent statements to "Richard Watson *and* White Marlin/Agua/Talco/Torren's representatives."[19] The SAC further muddies the water by claiming Watson "identified himself as the VP of Operations for White Marlin, and upon information and belief, Torrent and Agua, upon information and belief represented that he had authority to bind Talco to these agreements."[20] This description makes it impossible to answer fundamental questions about Couvillion's fraud and negligent misrepresentation claims. When Watson made his supposedly fraudulent/negligent statements, was he speaking on his own behalf? Was he speaking for Agua? Talco? White Marlin? All three? And who were these other representatives of the Defendants? The SAC does not say.

---

[19]     *Id.* at XXI (emphasis added).

[20]     *Id.* at Paragraph XIII.

Couvillion's description of the alleged misrepresentation(s) is also absurdly vague. The SAC alleges Defendants "misrepresented the conditions of the work site during the bid process," but it does not address what about the conditions was misrepresented, why it was material to the bid process, explain how they impacted Couvillion's decisions, or explain how Couvillion relied on them. The SAC also fails to proffer even a general factual basis for Couvillion's contention that White Marlin *knew* that its representations about the condition of the work site were false when it made those representations. All these omissions are fatal to Couvillion's fraud claim. *Rivers v. Wells Fargo Home Mortg.*, No. CIV.A. H-12-2616, 2013 WL 1389977, at *3 (S.D. Tex. Apr. 4, 2013) (Rosenthal, J.) (dismissing fraud claim because "Rivers made conclusory allegations that Wells Fargo's statements were material and made with knowledge that they were false, but does not allege facts in support.").

Perhaps knowing that its allegations do not comply with Rule 9, Couvillion argues Rule 9 does not apply to its negligent misrepresentation claim because it "is plead in the alternative to fraud, it stands separate from any allegations of fraud, and no heightened pleading standard applies."[21] Couvillion

---

21      ECF 38 at 18.

cites no authority to support this novel proposition.[22] This is not surprising since the Fifth Circuit has held that a negligent misrepresentation claim must comply with Rule 9(b) if the plaintiff's "fraud and negligent misrepresentation claims are based on the same set of alleged facts." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.), *opinion modified on denial of reh'g,* 355 F.3d 356 (5th Cir. 2003). Couvillion does not even try to argue that its negligent misrepresentation claim is based on different facts from its fraud claim. For this reason, Couvillion's negligent misrepresentation claim cannot survive.

   Finally, Couvillion argues the economic loss doctrine does not apply to either its fraud or negligent misrepresentation claims because the SAC alleges that Defendants' misrepresentations "induced Couvillion to 'stay on the project, and incur additional expenses' due to its reliance on the fraudulent misstatements or misrepresentations."[23] But the SAC does not allege an *injury* that is "distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Advon Corp. v. Coopwood's Air Conditioning Inc.*, 517 F. Supp. 3d 656, 668 (S.D. Tex. 2021). This same issue defeats Couvillion's suggestion that the economic loss doctrine does not apply because it can recover exemplary damages

---

[22]  *Id.*

[23]  *Id.* at 19.

for fraud, but not for breach of contract. Again, "punitive damages are not compensation for injury," but rather "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 48, 99 S. Ct. 2121, 2125, 60 L. Ed. 2d 698 (1979). As a result, the availability of these damages does not establish a "distinct, separate, and independent economic loss recoverable under a breach of contract." *Advon*, 517 F. Supp 3d. at 668.

### E.  Couvillion's claim for quantum meruit is not viable.

Couvillion urges the Court not to dismiss its quantum meruit claim against Agua and Talco because the SAC alleges it "provided valuable services to Defendants" and states that "Defendants accepted Couvillion's services, but failed to pay Couvillion for the reasonable value of those services."[24] As with Couvillion's suit on sworn account claim, this claim cannot survive because it is insufficiently detailed (what "valuable goods and services"?) and because the Invoices and Daily Work Reports attached to the SAC contradict Couvillion's assertion that it provided either Agua or Talco any services.

---

[24]  ECF 38 at 20.

### F.    "Interest owed and attorneys' fees" is not a cause of action.

Couvillion appears to misunderstand the basis of Defendants' Motion to Dismiss its "Interest Owed and Attorneys' Fees" claim. Defendants do not argue that these are not potentially recoverable. But that does not make them independent causes of action. As a result, this "Interest owed" cause of action should be dismissed.

### CONCLUSION

Couvillion is attempting to transform a straightforward dispute about the parties' obligations under the Contracts into a sprawling multiparty fraud case. Despite being given multiple opportunities to amend its complaint, the SAC and its attachments still do not support the overwhelming majority of Couvillion's claims. The Court should therefore dismiss all of Couvillion's claims against Agua and Talco with prejudice and should dismiss all claims against White Marlin other than its Breach of Contract and Suit on Sworn Account claims with prejudice.[25]

---

[25]    In its Response, Couvillion requests the opportunity to amend its pleadings yet again. The Court should deny that request because Couvillion has been aware of Defendants' arguments since June of 2022, and has been given multiple opportunities to remedy these pleading defects. Rather than use the opportunities to amend to fix its problems, Couvillion simply added new defendants and new causes of action.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *Jeb Golinkin*
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
Federal ID No. 2515657
Michael Cancienne
State Bar No. 24055256
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
Telephone: 713.955.4025
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATES OF SERVICE**

I certify that on May 18, 2023, I served this Motion on all counsel of record via CMECF, which will send notification of this filing to all counsel of record in this case.

*/s/ Jeb Golinkin*
Joseph W. Golinkin II